**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com
*- additional counsel on signature page -*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAR MANDALEVY, Individually and on Behalf of All Others Similarly Situated, | Case No. **'17 CV0667 LAB JMA** |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| vs. | |
| BOFI HOLDING, INC., GREGORY GARRABRANTS, and ANDREW J. MICHELETTI, | JURY TRIAL DEMANDED |
| Defendants | |

Plaintiff Bar Mandalevy ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants'

1

public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding BofI Holding, Inc. ("BofI" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired BofI securities between April 28, 2016 and March 30, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.     BofI Holding, Inc. operates as the holding company for Bank of Internet USA.  The Bank provides consumer and business banking products in the United States.

3.     Founded in January 1999, the Company is headquartered in San Diego, California.  The Company's common stock trades on the NASDAQ under the ticker symbol "BFOI."

2

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) BofI was engaged in unlawful conduct; (ii) the foregoing conduct, when it became known, would subject the Company to heightened regulatory scrutiny and potential criminal sanctions; and (iii) as a result, BofI's public statements were materially false and misleading at all relevant times.

5.      On March 31, 2017, pre-market, the *New York Post* published an article entitled "Feds probe Bank of Internet for possible money laundering," disclosing that the Company was the subject of a probe led by the Justice Department and involving the Securities and Exchange Commission and the Treasury Department. The article stated in relevant part:

### Feds probe Bank of Internet for possible money laundering

By Kevin Dugan March 31, 2017 | 1:27am | Updated

Federal agents are conducting a probe into possible money laundering at online lender Bank of Internet, The Post has learned.

The Justice Department, which is leading the investigation, has interviewed at least one former employee of the San Diego-based bank, sources said.

Bank of Internet Chief Executive Gregory Garrabrants, head of the bank since 2007, is also a focus of the probe, sources said. Neither the 18-year-old bank nor Garrabrants has been accused of any criminal activity.

Part of the probe is centered on regulatory filings made by Bank of Internet, also known as BofI, to the Office of the Comptroller of the Currency, according to four people familiar with the matter.

3

*** 

"Greg has answered these questions over and over again, and I don't know why you're all of a sudden coming up with all of this silliness, and in pursuit of what?" Eshel Bar-Adon, BofI's chief legal officer, told The Post.

Bar-Adon refused to answer questions about any possible criminal probe, but said the company was "completely unaware" of any indictments in the works.

"Due to false allegations made in short seller hit pieces and pending litigation, agencies routinely ask questions to assure themselves that such allegations are without basis," Bar-Adon added in a written statement. "However, there are no material investigations that would require public disclosure and BofI remains in good regulatory standing."

Spokespersons for the Justice Department and OCC, which is also investigating, declined to comment. The Securities and Exchange Commission and the Treasury Department, also in the probe, didn't answer an e-mail seeking comment.

It's not clear whether any of the probes will result in indictments.

6.      On this news, BofI's share price fell $1.45 or 5.26%, to close at $26.13 on March 31, 2017.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

4

9.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  BofI's principal executive offices are located within this Judicial District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the accompanying Certification, purchased common shares of BofI at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

13.     Defendant BofI is incorporated in Delaware, and the Company's principal executive offices are located at 4350 La Jolla Village Drive, Suite 140, Mailstop 801, San Diego, California 92122.  BofI's common stock trades on the NASDAQ under the ticker symbol "BFOI."

14.     Defendant Gregory Garrabrants ("Garrabrants") has served at all relevant times as the Company's Chief Executive Officer ("CEO"), President and Director.

15. Defendant Andrew J. Micheletti ("Micheletti") has served at all relevant times as the Company's Chief Financial Officer ("CFO").

16. The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17. BofI Holding, Inc. operates as the holding company for Bank of Internet USA. The Bank provides consumer and business banking products in the United States.

### Materially False and Misleading Statements Issued During the Class Period

18. The Class Period begins on April 28, 2016, when BofI filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q3 2016 10-Q"). For the quarter, BofI reported net income of $35.91 million, or $0.56 per diluted share, on revenue of $92.87 million, compared to net income of $21.07 million, or $0.34 per diluted share, on revenue of $59.03 million for the same period in the prior year.

19. In the Q3 2016 10-Q, the Company stated, in relevant part:

On April 26, 2016, the Company's Board of Directors amended the Company's Code of Ethics to align the terminology and structure with our Master Policy on Ethics and Professional Integrity and the Statement of Ethical Principles and to implement other minor changes. The substance of the Code of Ethics remained substantially consistent with our prior Code of Ethics. The Code of Ethics is applicable to all officers, directors and employees of the Company, and will supplement and be in addition to the Master Policy on Ethics and Professional Integrity and the Statement of

6

Ethical Principle. The Code of Ethics, as amended, is attached hereto as Exhibit 14.1 and will also be made available via written request sent to BofI Holding, Inc., Attn: Corporate Secretary, 4350 La Jolla Village Drive, Suite 100, San Diego, CA 92122.

20.     In BofI's Code of Ethics, the Company stated, in part:

**BOFI Code of Ethics**

This "Code" shall be known as the Code of Ethics for BofI Holding, Inc. ("Company") and applies to Holding's Chief Executive Officer, Chief Financial Officer, and Chief Accounting Officer, Holding's directors, Holding's other non-employee officers, and any employees Holdings may have in the future (collectively, "Holding's Personnel"). This Code shall supplement and be in addition to the Master Policy on Ethics and Professional Integrity (the "Master Policy"). All capitalized terms not defined herein shall have the meaning ascribed to such terms in the Master Policy.

A. **General Policy Statement**: Holding's Personnel will conduct business in accordance with Company's ethical standards. Holding's Personnel are expected to uphold Company's reputation in the performance of their duties. Subject to and in furtherance of the Master Policy, this Code addresses the requirements for Conflict of Interest, proper disclosure of reports, compliance with Applicable Laws, maintaining internal procedures for prompt reporting of violations to this Code, and accountability for adherence to this Code. See Item 406 of Regulation S-K; Item 406 of Regulation S-B; and the Sarbanes-Oxley Act; NASDAQ Corporate Governance Listing Requirements Section 5610.

B. **Conflicts of Interest:** Holding's Personnel shall comply with the Master Policy.

C. **Disclosure:** Holding's Personnel are expected to provide to shareholders and financial markets proper disclosure in (i) reports and documents that Holding files with or submits to the Securities Exchange Commission and (ii) in other public communications, if applicable.

D. **Compliance with Applicable Laws and Regulations:** Holding's Personnel, in the performance of their duties, must comply with Applicable

Laws. Determination of any violations shall be in accordance with the processes provided by the Master Policy for violations thereof.

E. **Internal Reporting of Code Violations**: Company is committed to establishing procedures that will govern the receipt, review, and treatment of complaints received by Company regarding matters covered by this Code, including, without limitation, accounting, internal accounting controls or accounting matters. Each member of Holding's Personnel shall endeavor to promote compliance with this Code and compliance with the Master Policy. Holding's Personnel shall report violations of this Code to Holding's Chief Executive Officer, unless the report directly involves the Chief Executive Officer, in which case the report may be made to the Chair of the Audit Committee (currently Mr. Paul Grinberg who can be reached by telephone at (858) 309-6904 or by email at Paul.Grinberg@bofi.com). Company will not permit retaliation against any Team Member for reports of breaches of either this Code or the Master Policy, in each case, made in good faith.

F. **Administration of the Code of Ethics**: It is the responsibility of each officer and director of Holding to be familiar with this Code and the Master Policy. Company shall use its good faith efforts to ensure that Holding's Personnel comply with the provisions hereof. Holding's Personnel who violate provisions of this Code may be subject to discipline, up to and including, but not limited to, dismissal from employment or position, as applicable.

G. **Disclosures**: Company is required to make a copy of this Code publicly available in accordance with the Sarbanes Oxley Act, including rules and regulations promulgated pursuant thereto, as well as in accordance with NASDAQ Corporate Governance Listing Requirements Section 5610. Company complies with this obligation by publishing in its Annual Report, or a similar public filing, instructions with respect to requesting a copy of this Code.

H. **Waivers:** Waivers from this Code may be made only with the prior consent of the Chairperson of Company's Board of Directors or a board committee appointed by the Chairperson. Waivers must be promptly disclosed in accordance with Applicable Law and NASDAQ Corporate Governance Listing Requirements Section 5610.

21.    The Q3 2016 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

22.    On August 25, 2016, BofI filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended June 30, 2016 (the "2016 10-K").  For the quarter, BofI reported net income of $29.73 million, or $0.46 per diluted share, on revenue of $86.17 million, compared to net income of $24.40 million, or $0.39 per diluted share, on revenue of $65.57 million for the same period in the prior year. For fiscal year 2016, BofI reported net income of $119.29 million, or $1.85 per diluted share, on revenue of $327.35 million, compared to net income of $82.68 million, or $1.34 per diluted share, on revenue of $229.54 million for fiscal year 2015.

23.    In the 2016 10-K, the Company stated, in relevant part:

**Anti-Money Laundering and Customer Identification.** The U.S. government enacted the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act") on October 26, 2001 in response to the terrorist events of September 11, 2001. The USA PATRIOT Act gives the federal government broad powers to address terrorist threats through enhanced domestic security measures, expanded surveillance powers, increased information sharing, and broadened anti-money laundering requirements. In February 2010, Congress re-enacted certain expiring provisions of the USA PATRIOT Act.

***

9

We operate in a highly regulated industry and are subject to oversight, regulation and examination by federal and/or state governmental authorities under various laws, regulations and policies, which impose requirements or restrictions on our operations, capitalization, payment of dividends, mergers and acquisitions, investments, loans and interest rates charged and interest rates paid on deposits. ***We must also comply with federal anti-money laundering, tax withholding and reporting, and consumer protection statutes and regulations.*** A considerable amount of management time and resources is devoted to oversight of, and development and implementation of controls and procedures relating to, compliance with these laws, regulations and policies.

(Emphasis added.)

24.     The 2016 10-K contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the 2016 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

25.     On October 27, 2016, BofI filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q1 2017 10-Q"). For the quarter, BofI reported net income of $28.90 million, or $0.45 per diluted share, on revenue of $84.51 million, compared to net income of $25.50 million, or $0.40 per diluted share, on revenue of $68.92 million for the same period in the prior year.

26.     The Q1 2017 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2017

10

10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     On January 30, 2017, BofI filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended December 31, 2016 (the "Q2 2017 10-Q"). For the quarter, BofI reported net income of $32.30 million, or $0.50 per diluted share, on revenue of $93.06 million, compared to net income of $28.15 million, or $0.44 per diluted share, on revenue of $79.39 million for the same period in the prior year.

28.     The Q2 2017 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     The statements referenced in ¶¶ 18-28 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) BofI was engaged in unlawful conduct; (ii) the foregoing conduct, when it became known, would subject the Company to heightened regulatory scrutiny and potential criminal sanctions; and (iii) as

11

a result, BofI's public statements were materially false and misleading at all relevant times.

## **The Truth Emerges**

30.    On March 31, 2017, pre-market, the *New York Post* published an article entitled "Feds probe Bank of Internet for possible money laundering," disclosing that the Company was the subject of a probe led by the Justice Department and involving the Securities and Exchange Commission and the Treasury Department. The article stated in relevant part:

### **Feds probe Bank of Internet for possible money laundering**

By Kevin Dugan March 31, 2017 | 1:27am | Updated

Federal agents are conducting a probe into possible money laundering at online lender Bank of Internet, The Post has learned.

The Justice Department, which is leading the investigation, has interviewed at least one former employee of the San Diego-based bank, sources said.

Bank of Internet Chief Executive Gregory Garrabrants, head of the bank since 2007, is also a focus of the probe, sources said. Neither the 18-year-old bank nor Garrabrants has been accused of any criminal activity.

Part of the probe is centered on regulatory filings made by Bank of Internet, also known as BofI, to the Office of the Comptroller of the Currency, according to four people familiar with the matter.

\*\*\*

"Greg has answered these questions over and over again, and I don't know why you're all of a sudden coming up with all of this silliness, and in pursuit of what?" Eshel Bar-Adon, BofI's chief legal officer, told The Post.

12

Bar-Adon refused to answer questions about any possible criminal probe, but said the company was "completely unaware" of any indictments in the works.

"Due to false allegations made in short seller hit pieces and pending litigation, agencies routinely ask questions to assure themselves that such allegations are without basis," Bar-Adon added in a written statement. "However, there are no material investigations that would require public disclosure and BofI remains in good regulatory standing."

Spokespersons for the Justice Department and OCC, which is also investigating, declined to comment. The Securities and Exchange Commission and the Treasury Department, also in the probe, didn't answer an e-mail seeking comment.

It's not clear whether any of the probes will result in indictments.

31.    On this news, BofI's share price fell $1.45 or 5.26%, to close at $26.13 on March 31, 2017.

32.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired BofI common shares traded on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal

13

representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, BofI common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by BofI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

14

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of BofI;

- whether Defendants caused BofI to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of BofI securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

39.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

15

- BofI common shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased and/or sold BofI common shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

40.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

16

43.     This Count is asserted against BofI and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.     During the Class Period, BofI and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45.     BofI and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of BofI common shares during the Class Period.

46.     BofI and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of BofI were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or

documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of BofI, their control over, and/or receipt and/or modification of BofI allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning BofI, participated in the fraudulent scheme alleged herein.

47.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other BofI personnel to members of the investing public, including Plaintiff and the Class.

48.     As a result of the foregoing, the market price of BofI common shares was artificially inflated during the Class Period.  In ignorance of the falsity of BofI's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of BofI common shares during the Class Period in purchasing BofI common shares at prices that were artificially inflated as a result of BofI's and the Individual Defendants' false and misleading statements.

49.     Had Plaintiff and the other members of the Class been aware that the market price of BofI common shares had been artificially and falsely inflated by BofI's and the Individual Defendants' misleading statements and by the material adverse information which BofI's and the Individual Defendants did not disclose, they would not have purchased BofI's common shares at the artificially inflated prices that they did, or at all.

50.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

51.     By reason of the foregoing, BofI and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of BofI common shares during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

52.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.     During the Class Period, the Individual Defendants participated in the operation and management of BofI, and conducted and participated, directly and indirectly, in the conduct of BofI's business affairs. Because of their senior positions,

19

they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

54.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to BofI's financial condition and results of operations, and to correct promptly any public statements issued by BofI which had become materially false or misleading.

55.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which BofI disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause BofI to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of BofI within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of BofI common shares.

56.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by BofI.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

20

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  April 3, 2017

Respectfully submitted,

**POMERANTZ LLP**

By: _/s/ Jennifer Pafiti_
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100

21

Facsimile:(212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com
E-mail: hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:   (312) 377-1181
Facsimile:   (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*