SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JOHN P. STIGI III, Cal. Bar No. 208342
  jstigi@sheppardmullin.com
POLLY TOWILL, Cal. Bar No. 120420
  ptowill@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:   310.228.3700
Facsimile:   310.228.3701

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ALEJANDRO E. MORENO, Cal. Bar No. 256802
  amoreno@sheppardmullin.com
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone:   619.338.6500
Facsimile:   619.234.3815

Attorneys for Defendants
BOFI HOLDING, INC., GREGORY
GARRABRANTS and ANDREW J. MICHELETTI

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAR MANDALEVY, individually and on behalf of all others similarly situated, <br><br>     Plaintiffs, <br><br>     v. <br><br> BOFI HOLDING, INC.; GREGORY GARRABRANTS; ANDREW J. MICHELETTI, <br><br>     Defendants. | Case No. 3:17-cv-00667-LAB-JMA <br><br> **DEFENDANTS' RESPONSE TO MOTIONS OF DAVID GRIGSBY, THE BOFI INVESTOR GROUP, AND THE BOFI INVESTORS GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL** <br><br> Date:   July 31, 2017 <br> Time:   11:30 a.m. <br><br> The Hon. Larry Alan Burns <br> Courtroom 14A, 14th Floor <br> (Carter/Keep) |

Case No. 3:17-cv-00667-LAB-JMA

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 3

    A.    The Pre-Purchase Litigation ................................................................ 3

        1.    The Erhart Action ....................................................... 3

        2.    In re BofI ...................................................................... 4

    B.    Notwithstanding the Money Laundering-Related Claims in Erhart and In re BofI, the PLPs Invest in BofI ....................... 4

    C.    The New York Post Article ................................................... 5

    D.    The Instant Action ................................................................ 5

III.    THIS COURT CAN AND SHOULD CONSIDER THE IMPORTANT ISSUES RAISED IN THIS OPPOSITION ................................ 6

IV.     ARGUMENT ................................................................................................ 7

    A.    The PSLRA Requires Inquiry Into Whether Any PLP Is Subject to a Unique Defense ................................................... 8

    B.    Non-Reliance Is a Unique Defense That Defeats Typicality ............ 8

    C.    The Erhart and In re BofI Actions Purport to Identify the Identical Money Laundering and Government Investigation Risks BofI Allegedly Concealed ......................................... 10

    D.    Each PLP Fails to Make the Requisite Typicality Showing Because No PLP Disclaims Pre-Purchase Knowledge of the Erhart and In re BofI Actions ............................................. 11

V.      CONCLUSION ............................................................................................. 12

SMRH:483181207.5

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

1

TABLE OF AUTHORITIES

2

Page(s)

3

<u>Cases</u>

4

*In re Advanced Tissue Scis. Sec. Litig.*

5
    184 F.R.D. 346 (S.D. Cal. 1998) ........................................................... 6

6

*Atari Corp. v. Ernst & Whinney*
    981 F.2d 1025 (9th Cir. 1992) .............................................................. 9

7

8

*In re Bally Total Fitness Sec. Litig.*
    2005 U.S. Dist. LEXIS 6243 (N.D. Ill. 2005) .................................... 12

9

10

*Basic Inc. v. Levinson*
    485 U.S. 224 (1988) .................................................................... 2, 8, 9

11

*Brown v. China*

12
    2011 U.S. Dist. LEXIS 151131 (C.D. Cal. Aug. 29, 2011) .................. 7

13

*In re Cavanaugh*

14
    306 F.3d 726 (9th Cir. 2002) ......................................................... 8, 11

15

*City of Pontiac Gen. Empls' Ret. Sys. v. Lockheed Martin Corp.*

16
    844 F. Supp. 2d 498 (S.D.N.Y. 2012) ............................................. 6, 7

17

*In re Enron Corp. Sec. Litig.*

18
    206 F.R.D. 427 (S.D. Tex. 2002) ...................................................... 12

19

*Finocchiaro v. NQ Mobile, Inc.*
    2016 U.S. Dist. LEXIS 166245 (S.D.N.Y. Dec. 1, 2016) ..................... 7

20

*Hanon v. Dataproducts Corp.*

21
    976 F.2d 497 (9th Cir. 1992) ........................................................... 8, 9

22

*Takeda v. Turbodyne Techs., Inc.*

23
    67 F. Supp. 2d 1129 (C.D. Cal. 1999) ................................................ 7

24

*In re Terayon Commc'ns Sys., Inc. Sec. Litig.*

25
    2004 U.S. Dist. LEXIS 3131 (N.D. Cal. Feb. 23, 2004) ...................... 6

26

*Wenderhold v. Cylink Corp.*

27
    188 F.R.D. 577 (N.D. Cal. 1999) ........................................................ 6

28

-ii-

SMRH:483181207.5

Case No. 3:17-cv-00667-LAB-JMA
DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

<u>Statutes</u>

15 U.S.C. § 17u-6 ............................................................................................ 3

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................... 8, 11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb) ............................................................ 8

Private Securities Litigation Reform Act of 1995 ..................................2, 6, 7, 8, 12

Sarbanes-Oxley Act, 18 U.S.C. § 1514A et seq. ............................................... 3

Securities Exchange Act of 1934 § 10(b) ......................................................... 2

Securities Exchange Act of 1934 § 20(a) ......................................................... 2

15 U.S.C. § 78t(a) ............................................................................................. 2

15 U.S.C. § 78j(b) ............................................................................................. 2

<u>Other Authorities</u>

17 C.F.R. § 240.10b-5 ...................................................................................... 2

Rule 10b-5 ................................................................................................. 2, 7, 9

Rule 23 ......................................................................................................... 8, 11

# I.      INTRODUCTION

Defendants BofI Holding, Inc. ("BofI"), Gregory Garrabrants, and Andrew J. Micheletti, who have yet to be served with the Complaint in this action, submit this response to the proposed lead plaintiffs' (the "PLPs") respective motions for appointment as lead plaintiff and approval of counsel.[1]   Defendants submit this response to bring to this Court's attention important information the PLPs did not include in their submissions that pertains directly to this Court's appointment decision.

This lawsuit was triggered by the publication of an article in the *New York Post* on March 31, 2017.   The article referenced allegations that were previously made in a pre-existing and pending securities class action lawsuit filed against BofI in October 2015, *In re BofI Holding, Inc. Securities Litigation*, Case No 3:15-cv-02324-GPC-KSC (S.D. Cal. filed Oct. 15, 2015) (Curiel, J.) ("*In re BofI*"), including claims that BofI failed to comply with anti-money laundering laws, and speculated that those allegations are the subject of government investigations.   BofI's stock price dropped after the *New York Post* article was published.   Immediately after that, this strike suit was filed.   It alleges that BofI failed to disclose risks to its business resulting from (1) BofI's purported non-compliance with anti-money laundering laws and (2) BofI's alleged status as an actual or potential target of government investigations, mirroring allegations already set forth in *In re BofI*.[2]

---

[1] The competing PLPs are David Grigsby (Dkt. #3), BofI Investors Group (Dkt. #4), and BofI Investor Group  (Dkt. #5).

[2] It should be noted that on October 15, 2015, the Pomerantz law firm, which filed the present action and represents certain PLPs, filed a putative class action case styled *Golden v. BofI Holding, Inc., et al.*, which was consolidated into *In re BofI*. The same allegations of non-compliance with anti-money laundering laws were alleged in that case.  Moreover, Levi & Korsinsky, a firm that represents other PLPs issued multiple press releases in 2015 announcing the filing of a class action case against BofI and soliciting clients.  In spite, and maybe because, of this knowledge the PLPs chose to conceal *In re BofI* from this Court.

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

Under procedures set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), each PLP purports to show that its claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, are typical of those of the alleged class by suggesting its own ability to plead and prove the essential element of reliance through the fraud-on-the-market presumption of class-wide reliance recognized in *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988).  To this end, each PLP alleges, as it must, that it purchased BofI's common stock during the putative class period of April 28, 2016 through March 30, 2017, at prices inflated by defendants' allegedly false and misleading public statements and without knowledge of the supposedly undisclosed risks reported by the *New York Post*.

The problem for the PLPs is that the supposedly undisclosed risks to BofI's business resulting from BofI's purported non-compliance with anti-money laundering laws and its alleged status as an actual or potential target of government investigations are the very same purportedly undisclosed risks already the subject of allegations *In re BofI*.  Judge Curiel dismissed most of that case for failure to meet the heightened pleading standards of the PSLRA (*see* Declaration of John P. Stigi III ("Stigi Decl."), Ex. A) and defendants have denied the remaining meritless allegations about BofI's lending standards and its investment in strengthening certain of BofI's internal controls.  But the fact remains that each of the PLPs was on actual or constructive notice, before purchasing BofI securities during the putative class period, of the very same investment risks they now conveniently allege were not disclosed.  This is fatal to each PLP's ability to plead and prove the essential element of reliance.

Remarkably, no PLP has disclosed this pre-existing, functionally identical BofI-related litigation to this Court, much less revealed whether they knew of the litigation (and its allegations about the same supposedly undisclosed risks) before investing in BofI.  But their pre-purchase knowledge ties directly to the liability

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

theory advanced here — one which absurdly posits that, whenever a news article reports on an existing securities class action, investors who conveniently claim ignorance of the litigation before investing can bring a copy-cat case.  Each PLP's ability to demonstrate its own reliance is a fundamental prerequisite to showing typicality and serving in the lead plaintiff role, and so is an issue that warrants this Court's consideration at this appointment stage.  Hence, defendants now raise it.

## II.     BACKGROUND

### A.     The Pre-Purchase Litigation

Since October 2015, BofI has been accused (falsely, we note) in multiple court filings of violating anti-money laundering laws and concealing government investigations.

#### 1.     The *Erhart* Action

On October 13, 2015, a former BofI internal auditor sought corporate whistleblower protections against BofI including under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A et seq. and the Dodd-Frank Act, 15 U.S.C. § 17u-6.  *See Erhart v. BofI Holding, Inc.*, Case No. 15-cv-2287-BAS-NLS (S.D. Cal.) (Bashant, J.).  (*See* Stigi Decl. ¶ 3, Ex. B (*Erhart* Complaint).)  The alleged protected activity included uncovering information allegedly showing BofI's non-compliance with anti-money laundering laws and regulations.  *Erhart* Complaint ¶¶ 32-34, 40-43.  While defendants in *Erhart* have denied these and all other substantive allegations in the case, these allegations were available in the public record and received a great deal of public attention in the investment community when reported on by the *New York Times*, multiple other news sources and many investment oriented internet blogs.[3]

---

[3] On October 13, 2015, the *New York Times* published an article reporting on them. The next day BofI's stock price dropped 30.2% — representing more than half-a-billion dollars in market capitalization loss.

### 2.   *In re BofI*

On October 15, 2015, investors brought the first of two putative securities fraud class actions in this District against BofI, Mr. Garrabrants, Mr. Micheletti, and other officers and directors.[4]   The SAC alleges BofI, Mr. Garrabrants and Mr. Micheletti, among others, concealed BofI's "violat[ions of] various federal regula-tions and laws, including . . . the BSA . . . [and] the FDIC rules and regulations concerning BSA/Anti-Money Laundering ("AML") compliance programs."   SAC ¶ 114; *see also id.* ¶¶ 125, 128-142.   The SAC also accused BofI of failing to dis-close that it is the subject of pending civil and criminal investigations.   Echoing the *Erhart* action, the SAC alleges that BofI failed to disclose "information concerning government and regulatory subpoenas it had received and pending investigations by those agencies" and "BofI's filings with the SEC during the Class Period do not contain any mention of subpoenas or government or regulatory investigations of the Company."   *Id.* ¶ 219; *see also id.* ¶¶ 220-223.   The SAC also alleges in no uncertain terms, though without providing credible basis, that BofI "was indeed subject to government and regulatory investigation" (*id.* ¶ 221), citing to purported evidence of a pending SEC investigation against BofI.   *See id.* ¶¶ 223-226.[5]

**B.    Notwithstanding the Money Laundering-Related Claims in *Erhart* and *In re BofI*, the PLPs Invest in BofI**

Lawsuits against BofI in 2015 and 2016 explicitly and repeatedly charged BofI with concealing money laundering violations and related actual or potential government investigations, including criminal investigations.   Newspaper articles reported this as well.   Nevertheless, the PLPs each allegedly purchased BofI

---

[4] The Court consolidated the two cases and appointed Houston Municipal Employees Pension System ("HMEPS") as lead plaintiff. On November 25, 2016, HMEPS filed a Second Amended Class Action Complaint ("SAC"). The SAC in *In re BofI* alleges a class period of February 4, 2013 through February 3, 2016. (Stigi Decl. ¶ 4, Ex. C (SAC).)

[5] A letter dated June 28, 2017 from the SEC confirms that BofI is not, in fact, being recommended for an enforcement action.

common stock between January and March 2017.  *See* Dkt. #3 at Ex. 1; Dkt. #4 at Ex. B; Dkt. #5 at Ex. B.

## C.   The *New York Post* Article

On March 31, 2017, the *New York Post* published an article entitled "Feds probe Bank of Internet for possible money laundering."  (Stigi Decl. ¶ 5, Ex. D.) The article reported that "Federal agents are conducting a probe into possible money laundering at online lender Bank of Internet" and that "[t]he Justice Department, which is leading the investigation, has interviewed at least one former employee of the San Diego-based bank, sources said."  The article identified Mr. Garrabrants as "also a focus of the probe" which is "centered on regulatory filings made by Bank of Internet . . . to the Office of the [OCC].   The article also explicitly linked its coverage back to the allegations of *Erhart* and *In re BofI*, reporting that:

> In late 2015, a Houston pension fund filed a civil suit against BofI and its CEO claiming the bank "misrepresented the risks of investing" with it.
>
> BofI allegedly filed incorrect call reports to hide loans made to foreign nationals without requiring them to provide a tax identification number — a form of ID that's used to root out money laundering, the suit alleges.
>
> *            *            *
>
> BofI's accounting and money-laundering controls have been the subject of lawsuits for at least two years — since a former auditor, Charles Erhart, accused Garrabrants in a separate civil suit of flouting disclosure rules.

(Stigi Decl. ¶ 5, Ex. D.)

## D.   The Instant Action

After BofI's stock price declined by 5.26% on March 31, 2017, plaintiff Bar Mandalevy brought the instant action on behalf of certain purchasers of the common stock of BofI who acquired their shares between April 28, 2016 and March 30, 2017 — an alleged class period that begins less than two months after the end date of the alleged three year class period in *In re BofI*.  The complaint alleges that "Defendants made false and/or misleading statements and/or failed to disclose that: (i) BofI was

engaged in unlawful conduct; (ii) the foregoing conduct, when it became known, would subject the Company to heightened regulatory scrutiny and potential criminal sanctions." Dkt. # 1, ¶¶ 4, 29. Under a section entitled "The Truth Emerges," the complaint points to the March 31, 2017 *New York Post* article reporting on the alleged DOJ-led money-laundering-related investigation of BofI. (*Id.* ¶¶ 4, 29, 30).

## III.   THIS COURT CAN AND SHOULD CONSIDER THE IMPORTANT ISSUES RAISED IN THIS OPPOSITION

Defendants anticipate the PLPs will argue that only putative class members — not defendants — have PSLRA standing to address typicality at the lead plaintiff-appointment stage. Courts are split on whether the PSLRA bars defendants from participating at this stage.[6] But this Court need not resolve this question because, as recognized in this District, a district court may address appointment-related issues *sua sponte* and, in doing so, consider any concerns raised by a defendant. *See In re Advanced Tissue Scis. Sec. Litig.*, 184 F.R.D. 346, 348 n.8 (S.D. Cal. 1998) (declining to resolve "[w]hether defendants have standing to be heard . . . in order to decide the instant [lead plaintiff-appointment] motions" because it had "the inherent authority to address the concerns raised by defendants *sua sponte*"). Other district courts within the Ninth Circuit take this same approach. *See*, *e.g.*, *In re Terayon Commc'ns Sys., Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 3131, at *19-20 (N.D. Cal. Feb. 23, 2004) (without deciding the issue of defendants' standing, allowing defendants to submit evidence challenging lead plaintiff's appointment given court's overriding "duty to monitor whether lead plaintiffs are capable of adequately protecting the interests of class members"); *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 584 (N.D. Cal. 1999) (defendants' standing "need not be addressed at this juncture because, regardless whether defendants have standing to object at this stage, the statute requires the court to determine whether the proposed lead

---

[6] *See City of Pontiac Gen. Empls' Ret. Sys. v. Lockheed Martin Corp.*, 844 F. Supp. 2d 498, 501 n.3 (S.D.N.Y. 2012) (identifying split).

SMRH:483181207.5

plaintiffs are capable of adequately protecting the interests of the class members'");
*Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1138 (C.D. Cal. 1999) (explaining that regardless of defendants' lack of formal standing to challenge typicality, "the court may *sua sponte* raise and address certain of the concerns addressed in defendants' statement"); *see also Brown v. China*, 2011 U.S. Dist. LEXIS 151131, at *38 (C.D. Cal. Aug. 29, 2011) (considering competing plaintiff's withdrawn opposition to another plaintiff's appointment because, although withdrawn, "the court has an independent duty to see that a class is adequately represented"). Hence, any argument by the PLPs that the defendants lack standing is a red herring because it is an issue this Court need not decide.[7]

## IV.   ARGUMENT

To demonstrate typicality, each PLP must likely not be subject to a unique defense. Here, by the time each PLP purchased BofI's shares, the *Erhart* and *In re BofI* allegations (reported publicly in the press) had already raised the prospect that BofI failed to comply with anti-money laundering laws and faced the risk of civil and criminal regulatory enforcement actions. These are the very same risks the complaint in this action alleges the defendants concealed. Defendants have denied these allegations in *Erhart* and *In re BofI*, but to the extent any PLP was aware, pre-purchase, of this pending litigation and the claims alleged therein, its Rule 10b-5 claim is likely subject to a non-reliance defense and is atypical. The PLPs' motions fail to address this and so fail to show typicality.

---

[7] But even if this Court were to reach the issue, the PSLRA's standing restrictions are narrow and do not bar the defendants from being heard. As other courts have observed, the statute reserves to "member[s] of the purported plaintiff class" the right to submit certain rebuttal proof but does not "preclude a defendant from filing its opposition to a motion to appoint lead plaintiff" or from "arguing against appointment." *City of Pontiac*, 844 F. Supp. 2d at 501 n.3; *see also Finocchiaro v. NQ Mobile, Inc.*, 2016 U.S. Dist. LEXIS 166245, at *5 (S.D.N.Y. Dec. 1, 2016) (noting that "permitting defendants to make a limited facial challenge to a plaintiff's motion for appointment of lead plaintiff does not disrupt the statutory framework Congress set forth," and that "a therapeutic appointment process such as is envisaged by the PSLRA will work better with more information than less") (internal quotation marks omitted). The defendants have standing.

### A.   The PSLRA Requires Inquiry Into Whether Any PLP Is Subject to a Unique Defense

This Court must presume that the PLP with "the largest financial interest in the relief sought by the class" is the "most adequate plaintiff" but only if that person can also "satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure," specifically Rule 23(a)'s typicality and adequacy requirements.   15 U.S.C. § 78u-4(a)(3)(B)(iii); *see generally In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) (identifying relevant Rule 23 criteria).   It is well recognized that a Rule 23 typicality showing includes proof that the lead plaintiff's claim is not susceptible to a unique defense that poses a significant "distraction" risk by absorbing a lead plaintiff's time and energy and detracting from their prosecution of the action on behalf of the class as a whole.   *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (affirming denial of class certification motion on typicality grounds where named plaintiff was potentially subject to non-reliance defense).   It is thus incumbent on each PLP to address whether a defense unique to its claim will likely arise and distract from the class representation.   But even if a PLP can make this initial showing and become the presumptive "most adequate plaintiff," this presumption can be rebutted by proof of "unique defenses that render such plaintiff incapable of adequately representing the class."   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).   Hence, determining whether any given PLP may be subject to a unique defense is not a perfunctory exercise, but a recurring, central inquiry that permeates the entire appointment proceeding.

### B.   Non-Reliance Is a Unique Defense That Defeats Typicality

To the extent any PLP, before investing, accessed information calling into question knowledge of allegedly omitted information, the PLP's claim is potentially subject to a unique, non-reliance defense, rendering it atypical.   *See Hanon*, 976 F.2d at 507, 509.   The reason for this is fundamental:   to prove class-wide reliance a plaintiff must invoke the fraud-on-the-market presumption recognized in *Basic*.

1   This presumption posits that "in an open and developed securities market, the price
2   of a company's stock is determined by the available material information regarding
3   the company and its business," including any public misstatements.  485 U.S. at
4   241.  And because "[a]n investor who buys or sells stock at the price set by the mar-
5   ket does so in reliance on the integrity of that price, . . . an investor's reliance on any
6   public material misrepresentations . . . may be presumed for purposes of a Rule 10b-
7   5 action."  *Id.* at 247.

8       Here, to show typicality, the PLPs, using identical boilerplate, each claims
9   that it too purchased BofI shares at what are alleged to be artificially inflated market
10  prices.  *See* Dkt. #3 at 8, Dkt. #4 at 7, Dkt. #5 at 8-9.  At the same time, each
11  studiously avoids mentioning *Erhart* or *In re BofI*, and thus never states whether it
12  was aware of the allegations in these 2015 lawsuits (or press reports about them)
13  before investing during the 2017 class period.   But the fraud-on-the-market
14  presumption is defeated if the chain of causal inferences breaks at any given point:
15  "Any showing that severs the link between the alleged misrepresentation" and "the
16  price received (or paid) by the plaintiff" eliminates the presumption's underlying
17  logic.  *Basic*, 485 U.S. at 249.  *Basic* offers as an example of this the investor who,
18  at the time of the transaction, has already formed his own disbelief as to the
19  allegedly misstated facts, and so would have invested regardless.  *See id.*  Thus "one
20  way" the presumption fails is when "the plaintiff would have bought his stock at the
21  same price had he known the information that was not disclosed or represented."
22  *See Hanon*, 976 F.2d at 507.    And this is no doubt shown where the plaintiff
23  "close[s] his eyes to a known risk" and invests anyway.  *Atari Corp. v. Ernst &*
24  *Whinney*, 981 F.2d 1025, 1030 (9th Cir. 1992) ("If the investor already possesses
25  information sufficient to call the representations into question, he cannot claim later
26  that he relied on or was deceived by the lie.") (citation omitted).  It follows that any
27  PLP who invested while possessing information "calling into question" defendants'
28  statements about BofI's compliance with anti-money laundering laws and its status

1    as a government-investigation target is potentially barred from utilizing the fraud-
2    on-the-market presumption, and so is subject to a unique, non-reliance defense.

3         **C.    The *Erhart* and *In re BofI Actions* Purport to Identify the Identical
4              Money Laundering and Government Investigation Risks BofI
5              Allegedly Concealed**

6         Comparing the concealed money laundering and government investigation
7    risks alleged here with those alleged in *Erhart* and *In re BofI* show they exactly cor-
8    respond and are, in fact, one and the same.  Indeed, even slight familiarity with the
9    claims in *Erhart* and *In re BofI* would have put a PLP on full notice of the allegedly
10   concealed risks at issue here.

11        Plaintiff Mandalevy alleges that BofI failed to disclose the alleged money
12   laundering-related conduct and that such conduct, "when it became known, would
13   subject the company to heightened scrutiny and potential criminal sanctions."  *See*
14   Dkt #1, ¶¶ 4, 29.  He alleges that the "[t]ruth [e]merged" when a *New York Post*
15   article "revealed" a DoJ-led money laundering-related investigation of BofI.  But the
16   *Erhart* complaint fully encompasses these allegations.  *See Erhart* Complaint ¶¶ 32,
17   33, 40-42.  Likewise, in *In re BofI*, the SAC purports to show how "BofI deceived
18   its regulators (and investors) by engaging in undisclosed, widespread misconduct
19   that . . . subjected the Company to enormous risks of regulatory action, legal
20   liability, and significant penalties and fines."  SAC ¶ 46.  The SAC details a host of
21   alleged money-laundering related violations and the imagined civil and criminal
22   investigation risk BofI faced.  *See id.* ¶¶ 114-124, 125-142, 219-226.  And, if there
23   were any doubt about the relationship between the *Erhart* and *In re BofI* allegations
24   and those in the instant case, the *New York Post* article expressly links its reporting
25   back to *Erhart* and *In re BofI*.[8]

26   ───────────────────

27   [8] Among other things, the *New York Post* article reports  that "[i]n late 2015, a
     Houston pension fund filed a civil suit against BofI and its CEO claiming the bank
28   'misrepresented the risks of investing' with it," risks that included BofI "fil[ing]

-10-

### D.     Each PLP Fails to Make the Requisite Typicality Showing Because No PLP Disclaims Pre-Purchase Knowledge of the *Erhart* and *In re BofI* Actions

The likelihood of a non-reliance defense defeating the PSLRA's lead plain-tiff-typicality requirement is significant.  As demonstrated above, at the time each PLP allegedly purchased BofI stock, litigation pending in this District already claimed that defendants had concealed from regulators and investors (1) BofI's non-compliance with anti-money laundering laws and (2) its status as a target of govern-ment investigations, including grand jury investigations.  Defendants deny these allegations, but any PLP's knowledge of them exposes it to a potential non-reliance defense.  Hence, it is incumbent on each PLP, as part of its prima facie typicality showing at the lead plaintiff appointment stage, to include some evidence indicating to what extent, if any, it was aware of the money laundering-related accusations against BofI at the time it invested.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (requiring proposed lead plaintiff to "otherwise satisfy the requirements of Rule 23"); *see In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002) (identifying a proposed lead plaintiff's initial "prima facie" evidentiary burden).

But, here, despite each PLP purporting to have the statutory "largest financial interest" in this lawsuit (PLP Grigsby, an individual, claims an approximate $94,049.42 loss), none mentions *Erhart* or *In re BofI*, much less explains how it came to pass that they invested large sums in BofI without first investigating the allegations in pending lawsuits against BofI.  The requisite prima facie showing is not met given this silence, which in itself is odd and justifies this Court's attention.  After all, a subjective disbelief in the alleged misstatements would cut-off the PLP's access to the fraud-on-the-market presumption.  And, although showing the exis-

---

incorrect call reports to hide loans made to foreign nationals without requiring them to provide a [TIN] — a form of ID that's used to root out money laundering." (Stigi Decl., Ex. D.)

Case No. 3:17-cv-00667-LAB-JMA

SMRH:483181207.5

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

1  tence of a unique defense requires more than mere speculation, the PSLRA "pro-
2  vides that we ask simply whether [a movant] is likely to be 'subject to' [unique
3  defenses] . . . [not that] the defense is likely to succeed." *In re Bally Total Fitness*
4  *Sec. Litig.*, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. 2005); *see also In re*
5  *Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455-56 (S.D. Tex. 2002) (declining to
6  appoint lead plaintiff with the largest losses when potential unique defenses con-
7  flicts could endanger the class).  Each PLP has failed to show the absence of a
8  unique defense as to itself.

9  **V.   CONCLUSION**

10       Under the PSLRA, typicality is a significant requirement at the lead plaintiff-
11  appointment stage, and this Court can and should consider the typicality-related
12  issues identified by defendants.  The PLPs' respective motions each fail to address
13  the possibility that, before investing, each PLP was aware of pending BofI-related
14  litigation that concerned the very alleged facts that defendants allegedly concealed.
15  The extent of the PLPs' pre-purchase knowledge of this litigation is a subject each
16  PLP wishes to — but cannot — avoid.   The issue is properly before this Court at
17  this time and should be examined.

18  Dated:  July 17, 2017          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

19

20                              By: _____
                                                  */s John P. Stigi III*
21                                          JOHN P. STIGI III
                                            POLLY TOWILL
22                                      Attorneys for Defendants
                                  BOFI HOLDING, INC., GREGORY
23                              GARRABRANTS and ANDREW J.
                                            MICHELETTI
                                Email: jstigi@sheppardmullin.com
24

25

26

27

28

SMRH:483181207.5                    DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
                                    APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL