UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAR MANDALEVY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BOFI HOLDING, INC.; GREGORY GARRABRANTS; and ANDREW J. MICHELETTI,<br><br>Defendants. | Case No.:  3:17-cv-0667-GPC-KSC<br><br>**ORDER APPOINTING LEAD PLAINTIFFS**<br><br>**[ECF Nos. 3, 4, 5]** |

Before the Court are three motions by putative-class members seeking to be appointed as lead plaintiff: one filed by Davis Grigsby (ECF No. 3), the second filed by the Philip Ricciardi, Larry Dooley, and Linda Ostermann (ECF No. 4), and the third filed by Joseph Shepard, David Siebert, Vickie Siebert, and Chao Wang (ECF No. 5).  For the reasons set forth below, the Court APPOINTS David Grigsby, Joseph Shepard, and David Siebert as lead plaintiff in this action.  Appointment of class counsel is deferred pending supplemental briefing by lead plaintiffs.

**I.    Class Complaint**

According to the Class Action Complaint, BofI Holding, Inc., is a holding company for "Bank of Internet USA," which provides consumer and business banking

products in the United States.  (ECF No. at 2 ¶ 2.)  The complaint alleges that during the class period—April 28, 2016, through March 30, 2017—Defendants "made materially false and misleading statements regarding the Company's business, operational and compliance policies."  (*Id.* at 3 ¶ 4.)  In light of these false and misleading statements, the complaint alleges, BofI's share price fell approximately 5.26%, leading to substantial losses for investors.  (*Id.* at 13 ¶ 31–32.)  The complaint alleges violations of Sections 10(b) and 20(a) of the Exchange Act and the Securities and Exchange Commission's Rule 10b-5.  (*Id.* at 16–20.)

## II.     Legal Standard

Under the Private Securities Litigation Reform Act ("PSLRA"), within 20 days after the class action securities complaint is filed, a public notice must be made advising members of the putative class of the pendency of the action, the claims asserted, and that any members of the purported class may move the court to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.  *Id.*

The Court must appoint as lead plaintiff "the member or members of the purported class that the court determines to be most capable of adequately representing the interests of class members."  *Id.* § 78u-4(a)(3)(B)(i).  The presumptively most adequate plaintiff (the "PMAP") is the person, or group of people, that "has either filed the complaint or made a motion" to be appointed lead plaintiff, "has the largest financial interest in the relief sought by the class," and makes a *prima facie* showing that he "otherwise satisfie[s] the requirement of Rule 23 of the Federal Rules of Civil Procedure."  *Id.* § 78u-4(a)(3)(B)(iii)(I); *Tai Jan Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF, 2014 WL 3945879, at *3 (N.D. Cal. Aug. 11, 2014).  Of the four elements listed in Rule 23, the most important inquiries for purposes of appointing lead plaintiffs in a securities suit are typicality and adequacy.  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

The Ninth Circuit has described the foregoing analysis as follows:

> In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy."

*Id.* "The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *Id.* at 732. This presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the [PMAP] . . . will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### III.   Filings

#### A. Motions for Appointment

The Court received three motions for appointment of lead plaintiff within the 60 days after notice was published.

##### i.   David Grigsby (ECF No. 3)

Grigsby asserts that he has the largest financial interest in this litigation. (ECF No. 3 at 5.) According to Grigsby, he has lost $94,049.42 as a result of his purchases of BofI securities during the class period. (*See* ECF No. 3-4.) Moreover, Grisgby argues that he satisfies the requirements of typicality and adequacy. He contends that his claims are "identical to, and neither compete nor conflict with the claims of other Class members" because he incurred losses as a result of his acquisition of BofI securities during the class period, which were inflated because of Defendants' materially false and misleading statements. (ECF No. 3-1 at 8.) Grigsby also states that his representation of the class would be adequate because his interests are clearly aligned with those of the class members—he is motivated by his damages as a result of the same wrongful conduct that caused the class members' damages. (*Id.* at 8–9.)

      **ii.**  **Philip Ricciardi, Larry Dooley, and Linda Ostermann (ECF No. 4.)**

Ricciardi, Dooley, and Ostermann ("Group One") state that they have lost a total of $19,962.93 "in connection with their Class Period purchases." (ECF No. 4-1 at 6.) The members of Group One indicate that their claims are typical of those of the class members because they "have the same essential characteristics and arise from a similar course of conduct," that is, Defendants' artificial inflation of BofI's stock price and the subsequent "market correction." (*Id.* at 7.) As to the adequacy of their representation, the Group One members state that their financial interest in the outcome of the litigation will ensure "vigorous advocacy," they have no conflicts with the class, and they understand their duties to the class members if selected as lead plaintiff. (*Id.* at 8.)

      **iii.**  **Joseph Shepard, David Siebert, Vickie Siebert, and Chao Wang (ECF No. 5)**

Joseph Shepard, David Siebert, Vickie Siebert, and Chao Wang ("Group Two") assert that they have lost $94,038 as a result of purchasing BofI securities during the class period. (ECF No. 5-1 at 1, 7–8.) With respect to typicality, the members of Group Two assert that their claims are the same as those of all class members. (*Id.* at 8–9.) With respect to the adequacy of their representation, the Group Two members state that there is "no antagonism" between their interests and those of the class, and the Group Two members' "losses demonstrate that it has a sufficient interest in the outcome of this litigation." (*Id.* at 9.)

  **B. Subsequent Filings**

On July 17, 2017, members of Group One filed a notice stating that it appears they do not have the largest financial interest in this litigation, and as a result, they "do not oppose the competing lead plaintiff motions." (ECF No. 7 at 2.) The Court therefore disregards Group One's motion for appointment as lead plaintiffs.

Also on July 17, 2017, Grigsby and two members of Group Two—Joseph Shepard and David Siebert—filed a "Joint Response" indicating that they "have collectively

agreed that, rather than continue to litigate their competing motions, it is in the best interest of the Class to amicably resolve the motions and pool their resources to effectively and efficiently prosecute the action." (ECF No. 8 at 3 ¶ 7.) Grigsby, Shepard, and David Siebert ("Group Three") claim to have lost $94,049, $63,320, and $13,062[1] respectively—a total of $170,431—as a result of Defendants' actions, and now seek to be appointed as lead plaintiffs. (*Id.* at 2 ¶ 3–5, 5.)

On July 17, 2017, Defendants filed a memorandum responding to the pending motions for appointment of lead plaintiff. (ECF No. 10.) Defendants assert that the plaintiffs in this action were "on actual or constructive notice, before purchasing BofI securities during the putative class period, of the very same investment risks they now conveniently allege were not disclosed" because other litigation concerning the same misstatements and/or omissions was occurring during the class period. (*Id.* at 2.) Defendants assert that this is relevant to the issue of appointment because "[e]ach [proposed lead plaintiff]'s ability to demonstrate its own reliance is a fundamental prerequisite to showing typicality and serving in the lead plaintiff role." (*Id.* at 3.) Because none of the proposed lead plaintiff have disclaimed pre-purchase knowledge of the litigation that was occurring during the class period, Defendants argue, none of them have made a *prima facie* showing of typicality. (*Id.* at 11–12.)

Group Three filed a response to Defendants' memorandum on July 24, 2017, arguing that Defendants lack standing to oppose their appointment as lead plaintiffs. (ECF No. 12 at 2–3.) The Group Three members also argue that Defendants' arguments are an improper attempt to shoe-horn a merits argument into the orderly appointment process. (*Id.* at 3–4.)

//

---

[1] The filing states that Shepard has lost $63,320 *and* $13,062. (*See id.* at 2 ¶ 5.) The Court assumes that this is a typographical error. In their earlier Group Two motion, Joseph Shepard's listed approximate losses are listed at $62,320, and David Siebert's approximate losses are listed at $12,983. (*See* ECF No. 5-5.)

## IV. Discussion

### A. PMAP Analysis

In light of the Group One members' notice indicating that they do not "oppose the competing lead plaintiff motions" (ECF No. 7), the Court is left with the following individuals who have moved for appointment as lead plaintiff: (1) David Grigsby alone, (2) Group Two (Joseph Shepard, David Siebert, Vickie Siebert, and Chao Wang), and (3) Group Three (Grigsby, Shepard, and David Siebert). According to their filings, Vickie Siebert's loss is approximately $6,492, and Chao Wang's loss is approximately $12,243. (ECF No. 5-5.) Group Two is not the PMAP because their aggregate losses is the least of these three options: Group Two's aggregate losses, $94,038, are less than Grigsby losses alone, $94,049.42. The Court is thus left with the options of Grigsby alone and Group Three. Because Group Three's losses are greater than Grigsby's alone, Group Three satisfies the "largest financial interest" element of the PMAP analysis.

The Court acknowledges that Group Three's motion to be appointed as lead plaintiff was filed beyond the time limit set forth in PSLRA. As stated above, within 20 days of the filing of a securities class action complaint, the plaintiff must publish a notice advising members of the purported plaintiff class. 15 U.S.C. § 78u-4(a)(3)(A)(i). "*[N]ot later than 60 days after* the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *Id.* §78-4(a)(3)(A)(i)(II) (emphasis added). The notice in this case was filed on April 3, 2017 (ECF Nos. 3-5, 4-3, 5-3); the window to file motions for appointment as lead plaintiff closed 60 days later, on June 2, 2017. Group Three did not file their request to be appointed lead plaintiffs until July 17, 2017. (ECF No. 8.)

This fact, however, does not automatically render Group Three's request to be appointed lead plaintiff untimely. Many courts have permitted a group of class members who have timely filed individual requests for appointment to consolidate their motions after the 60-day limit. *See, e.g.*, *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 398–99 (S.D.N.Y. 2014); *Peters v. Jinkosolar Holding Co., Ltd.*, No. 11

Civ. 7133 (JPO), 2012 WL 946875, at *10 (S.D.N.Y. Mar. 19, 2012); *Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *4 (S.D.N.Y. June 18, 2003). What is most important in this analysis, as these courts indicate, is that the Court must ensure that the group at issue "did not join up in order to 'manipulate the size of their financial loss.'" *Peters*, 2012 WL 946875, at *10 (quoting *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 819 (N.D. Ohio 1999)). The filings in this case make clear that the members of Group Three did not join together in an effort to thwart the appointment of a different plaintiff or group of plaintiffs. The members of Group Three have experienced the greatest loss out of all of the plaintiffs who have sought appointment. *See Peters*, 2012 WL 946875, at *10 ("Indeed, . . . three out of the four members of the group already have far and away the largest financial losses of any other potential lead plaintiff."). There is thus no reason to worry that the members of Group Three are manipulating the appointment process because no plaintiff outside of the members of Group Three that has moved for appointment would otherwise be entitled to appointment. The fact that no other plaintiff has opposed Group Three's appointment further supports the contention that Group Three's formation was not an effort to manipulate the appointment process.

Nor can the Court say that Group Three is an inappropriate candidate because it is a group of plaintiffs rather than a single plaintiff. The PSLRA plainly contemplates the appointment of a group as lead plaintiff by stating that the court should "appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added). While courts often look skeptically at a group's request for appointment when it appears that the group has been "cobbled together" for the sake of litigation, *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 3d 348, 356 (S.D.N.Y. 2011), that is not the case here. It is true that the Group Three members do not appear to have had any relationship to one another prior to the filing of this lawsuit. When presented with such a situation, however, "the majority of courts have adopted an

intermediate position, permitting unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis." *Id.* (internal quotation marks omitted). "A group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive." *Id.* (quoting *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 119 (S.D.N.Y. 2010)). Here, Group Three is acceptable because it consists of just three plaintiffs, *see City of Sterling Heights Gen. Empls.' Ret. Sys. v. Hospira, Inc.*, 2012 WL 1339678, at *8 (N.D. Ill. Apr. 18, 2012) (finding a plaintiff group proper when there were four members because that size is "small enough that they can adequately control and monitor the litigation"), and its filing states that the members' choice to band together was "in the best interest of the Class to amicably resolve the motions and pool their resources to effectively and efficiently prosecute the action" (ECF No. 8 at 3 ¶ 7). While the Court is of course free to question this assertion, it finds no reason to do so. *See Ark. Teacher Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 623 (D. Mass. 2016) (accepting a group as the PMAP because the group's filing indicated that "they, rather than their counsel, made the decision to move for appointment as a lead plaintiff group").

Grigsby, Shepard, and David Siebert also "otherwise satisfy the requirements of Rule 23." 15 U.S.C. § 78-u(4)(a)(3)(B)(iii)(cc). Their claims are typical of the class because they are identical; that is, their claims are based on the material misrepresentations made by Defendants that artificially inflated BofI's stock price. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."). Their proposed representation also appears to be adequate. There appears to be "an absence of antagonism" between the proposed lead plaintiffs and the class members, there is "a sharing of interests" between them, and there is no reason to suspect that "the suit is collusive." *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994). The Court therefore finds that the proposed lead plaintiff group of David Grigsby, Joseph Shepard, and David Siebert is the PMAP.

### B. Defendants' Opposition

The Court need not address the dispute between Defendants and Group Three over whether Defendants may participate in the process of appointing lead plaintiffs (*see* ECF No. 12 at 2–3) because even if the Court did consider Defendants' arguments, it would reject them. Defendants argue that the proposed lead plaintiffs' claims are not typical of those of the class because they are susceptible to unique defenses, namely, that they knew about related litigation during the class period, and as a result, they knew of the investment risks that they now assert were misrepresented. (*See* ECF No. 10 at 11–12.) This argument, however, does not identify any difference between the claims of the proposed lead plaintiffs and those of anyone in the class membership. Under Defendants' theory, *every* class member is susceptible to an individualized defense challenging the member's reliance on Defendants' misrepresentations. If this were a basis for precluding a certain plaintiff from acting as lead plaintiff in this case, no class member in this case could act as lead plaintiff. In other words, Defendants' argument does not operate as a challenge to the propriety of any specific plaintiff serving as lead plaintiff—it serves as an argument against the merits of the putative-class claims.

Because no party has offered evidence rebutting the presumption that Grigsby, Shepard, and David Siebert are the "group of persons" "most adequate" for serving as lead plaintiffs, *see* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), the Court will appoint them as a lead plaintiffs in this action.

### V. Class Counsel

Under 15 U.S.C. § 78u-4(a)(3)(B)(v), "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." Grigsby, Shepard, and David Siebert have selected Levi & Korsinsky, LLP and Pomerantz LLP as co-lead counsel. (ECF No. 8 at 4 ¶ 13.) While the Ninth Circuit has made clear that the choice of counsel belongs to the lead plaintiff and not the Court, *see Cavanaugh*, 306 F.3d at 736, courts are often skeptical when presented with requests to appoint more than one class counsel. *See, e.g.*, *Khunt*, 102 F. Supp. 3d at 540; *Boyd v. NovaStar Fin., Inc.*,

2007 WL 2026130, at *5 (W.D. Mo. July 9, 2007). Group Three's filing offers the Court no reason to believe that it is appropriate to have more than one lead counsel in this case. Because "[t]he presence of multiple law firms can have a deleterious effect[]" when "it result[s] in redundancies and inefficiencies that cause the total fee to increase," *Boyd*, 2007 WL 2026130, at *5, the Court is concerned that the appointment of multiple class counsel in this case would stifle the efficient administration of justice.

It may be the case that multiple class counsel is appropriate in this case. But Group Three's failure to identify why that is true renders the Court unable to make that determination. *See id.* ("Regardless of the reason for needing two law firms where it appears one will suffice, the reason needs to be presented so it can be evaluated by the Court."). The Court therefore defers appointment of class counsel for 21 days to allow the lead plaintiffs to (1) offer additional information explaining why multiple class counsel is appropriate, or (2) choose one firm to serve as class counsel.

## VI. Conclusion

The Court **APPOINTS** David Grigsby, Joseph Shepard, and David Siebert as lead plaintiffs in this action. Within 21 days, lead plaintiffs shall file briefing that (1) permits the Court to determine whether the appointment of more than one firm as class counsel is appropriate, or (2) chooses one firm to serve as class counsel. Grigsby's individual motion for appointment (ECF No. 3) and Group One's motion for appointment (ECF No. 4) is **DENIED as moot**, and Group Two's motion for appointment (ECF No. 5) is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 7, 2017

Hon. Gonzalo P. Curiel
United States District Judge