# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAR MANDALEVY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BOFI HOLDING, INC., GREGORY GARRABTRANTS, ANDREW J. MICHELETTI, ESHEL BAR-ADON and PAUL J. GRINBERG, <br><br> Defendants. | Case No.: 17cv667-GPC-KSC <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** <br><br> **ECF No. 42** |

 Before the Court is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. Plaintiffs in this case had purchased shares of Defendant Bank of Internet Holding, Inc. Plaintiffs claim that the company and its executives made numerous false representations in public statements, which misled investors. When the truth of these misrepresentations were revealed in media reports, BofI's share price dropped.

 The Court previously dismissed Plaintiffs' original Complaint, finding that most of the alleged misrepresentations were not actionable and that Plaintiffs had not adequately demonstrated loss causation for the actionable statements. Plaintiffs have filed an amended complaint which aims to cure the deficiencies of the previous pleading.

1

Defendants now move to dismiss the Second Amended Complaint ("SAC"). For the reasons set forth below, the Court grants Defendants' motion.

# I. BACKGROUND

A. <u>Factual History</u>

    1. <u>The Parties</u>

BofI Holding operates as the holding company for BofI federal bank. SAC, ECF No. 38 ¶ 2. BofI provides consumer and business banking products in the United States. *Id.* BofI's common stock trades on the NASDAQ. *Id.* ¶ 3. Plaintiffs in this case purchased shares of BofI and claim that the revelation of a number of Defendants' misrepresentations caused the share price to drop. *Id.* ¶¶ 19, 24.

Defendant Gregory Garrabrants has served at all relevant times as BofI's CEO, President, and Director. *Id.* ¶ 26. Defendant Andrew Micheletti served as BofI's Executive Vice President and CFO. *Id.* ¶ 27. Defendant Eshel Bar-Adon served as the Chief Legal Officer and Executive Vice President. *Id.* ¶ 28. Defendant Paul Grinberg served as a member of the Board of Directors and as Chairman of the Board since February 16, 2017. *Id.* ¶ 29. Plaintiffs claim that Defendants made false or misleading statements on two subjects – the company's loans to criminals and governmental investigations into BofI.

    2. <u>Defendants' Statements about Loans to Criminals</u>

On August 22, 2015, the *New York Times* ran a pre-Class Period article about BofI entitled, "An Internet Mortgage Provider Reaps the Rewards of Lending Boldly." SAC ¶ 36. The article stated that BofI had made loans to convicted criminals. *Id.* Moreover, a former internal auditor at BofI, Matt Erhart, allegedly uncovered widespread misconduct at BofI. *Id.* ¶ 37. In October 2015, Erhart filed a whistleblower protection lawsuit in this district. *Id.* Erhart's complaint claimed that BofI management may be altering company financials, BofI falsely responded to government subpoenas and inquiries, and BofI failed to disclose loans to criminals and politically exposed persons. *Id.*

On March 14, 2016, BofI filed a Form 8-K with the SEC, signed by Micheletti. *Id.* ¶ 67. The form states that BofI hired the law firm Dentons LLP to investigate whether there was support for the allegations of improprieties in Erhart's whistleblower complaint. *Id.* BofI asserted: "After an extensive investigation, Dentons advised the Audit Committee that, based on its investigation, it found no support for the conclusions of Mr. Erhart in the Complaint that the Bank or management engaged in wrongdoing or acts of fraud or impropriety." *Id.* On April 18, 2016, BofI issued a press release that referenced Erhart's whistleblower complaint and stated, "The absence of public enforcement actions highlight how disconnected these allegations are from the reality of BofI's highly compliant and top-performing business." *Id.* ¶ 68.

On October 26, 2016, *Seeking Alpha* published an article entitled, "Barry Minkow? Jason Galanis? Just When I Thought I Had BOFI Figured Out . . . There's More!" *Id.* ¶ 45; *see also* ¶ 117. The article ties BofI to making indirect loans to Jason Galanis, a convicted criminal. *Id.* ¶ 45. The author concludes: "My research leads me to believe that a reasonable person could infer that Galanis has a relationship with BofI that remains undisclosed to this date." *Id.*

On October 27, 2016, BofI conducted an earnings conference call, during which Garrabrants stated that "BofI has no interest credit exposure ownership of any loan, any kind of loan to Jason Galanis or any loan to Jason Galanis who is a guarantor including the $7 million loan mentioned" in the *Seeking Alpha* article. *Id.* ¶ 92.

### 3. Defendants' Statements about Agency Investigations of BofI

On May 28, 2015, the SEC opened a Matter Under Inquiry ("MUI") into BofI. *Id.* ¶ 49. An MUI is an informal investigation and is generally less serious in nature than a formal investigation. *Id.* However, on February 11, 2016, the SEC closed the MUI and launched a formal investigation. *Id.* ¶ 51. In accordance with its investigation, on February 22, 2016, SEC subpoenaed BofI regarding: 1) related party transactions; 2) activities of the board, audit committee and a management regarding conflicts of interest; and 3) loans given to two specific entities. *Id.* ¶ 52. On October 19, 2016, the SEC

expanded its investigation and issued a second subpoena that sought numerous documents related to single-family residential loans extended to non-resident aliens. *Id.* ¶ 55. According to a confidential witness identified as CW1, Garrabrants and Micheletti were aware of the formal SEC probe prior to March 2016. *Id.* ¶ 58. Moreover, CW1 discussed various federal investigations with Garrabrants in August 2015. *Id.* ¶ 60.

On April 28, 2016, BofI conducted an earnings conference call, during which Garrabrants stated that BofI "is in a strong regulatory standing, with no enforcement actions, has not been fined a single dollar by any regulatory agency and has not been required to modify its products or business practices." *Id.* ¶ 71. Garrabrants further stated that BofI "remain[s] in excellent regulatory standing." *Id.*

On August 2, 2016, BofI conducted an earnings conference call. *Id.* ¶ 78. Garrabrants acknowledged that "the nature of being a regulated entity is that we've constant dialogue with regulators, including the OCC, SEC, FDIC and the Fed." *Id.* Garrabrants further stated, "So we've not been asked any question or received any inquiry from any agency, including the SEC that would suggest concerns regarding financial misrepresentation, financial results, estimates, or other matters that would require an 8-K." *Id.* Garrabrants later reiterated, "We have not been asked any questions or received any inquiry that would suggest any concerns about our financials, financial misrepresentations, financial results estimates or anything else that would require the filing of an 8-K, meaning that would be material." *Id.*

On March 31, 2017, the *New York Post* published an article entitled, "Feds probe Bank of Internet for possible money laundering." *Id.* ¶ 100. The article stated that federal agents are investigating BofI for possible money laundering. *Id.* The article disclosed that the Justice Department, Office of the Comptroller of the Currency, SEC, and Treasury Department are all conducting an investigation. *Id.* The *New York Post* quoted Defendant Bar-Adon as stating that "there are no material investigations that would require public disclosure and BofI remains in good regulatory standing." *Id.*

That same day, BofI issued a press release in response to the *New York Post* article. *Id.* ¶ 101. BofI stated that the article "is nothing more than a rehash of baseless allegations that first surfaced over two years ago, and have been soundly refuted by BofI in court filings and on conference calls." *Id.* Moreover, BofI stated in the press release that the "Company has received no indication of, and has no knowledge regarding, such purported money laundering investigation." *Id.*

On April 6, 2017, the *New York Post* published a second BofI article entitled, "Feds Probe of Bank of Internet Helped by Aquarium Employee." *Id.* ¶ 126. This article reported that Kristi Procopio, a former marketing executive at BofI, "is telling authorities – including the San Diego US Attorney, the Securities and Exchange Commission and the FDIC – what she knows about alleged lax accounting and possible money laundering at BofI, court papers show." *Id.* The *New York Post* further stated that the "FDIC didn't immediately respond to an e-mail seeking comment on its investigation, which hasn't previously been reported." *Id.* On June 28, 2017, BofI's PR counsel stated that "there are no material investigations that would require public disclosure and BofI remains in good regulatory standing." *Id.* ¶ 106.

On October 25, 2017, the *New York Post* published a third BofI article entitled, "Bank of Internet Was under 16-month SEC investigation." *Id.* ¶ 130. The article disclosed that BofI was subject of a 16-month formal SEC investigation until June 2017. *Id.* ¶ 16. The article reported that the SEC investigation "was focused on alleged conflicts of interests, auditing practices, and loans made to two entities, according to subpoenas and government documents obtained by Probes Reporter, a publisher of investment research." ECF No. 32-9 at 1. These documents were "obtained through the Freedom of Information Act." *Id.*

B. Procedural History

On April 3, 2017, Plaintiffs filed a Class Action Complaint against Defendants which asserted a claim under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), by way of violation of the SEC's Rule 10b-5, 17 C.F.R. § 240.10b-5. Plaintiffs

5

also alleged a count for violation of Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a). Plaintiffs claimed that Defendants violated Sections 10(b) and 20(a) by making misrepresentations about BofI's loans to criminals and government investigations.

Defendants countered with a Motion to Dismiss. ECF No. 32. Defendants contended that Plaintiffs failed to plead particularized facts showing that Defendants made misstatements and that Plaintiffs failed to plead loss causation. On June 19, 2018, the Court granted Defendants' Motion to Dismiss. Dismissal Order, ECF No. 37. The order addressed Garrabrants' assertion during the August 2, 2016 conference call that BofI had not received any inquiry that would require the filing of an 8-K or that would be material. *Id.* The Court observed that Garrabrants did not deny that BofI was in contact with regulators; in fact, he stated that BofI was in constant dialogue with regulators, including the OCC, SEC, FDIC, and the Federal Reserve. *Id.* The issue before the Court was whether it was misleading for Garrabrants to say that in the course of constant dialogue with regulators, BofI was informed that the SEC investigation had reached a point that triggered a duty to disclose the investigation in a Form 8-K. *Id.* The Court concluded that Plaintiffs did not offer any reason why that was the case. *Id.*

However, the Court found that Plaintiffs adequately pleaded that it was false for BofI to state in its April 18, 2016 press release that Erhart's allegations are disconnected from reality. *Id.* at 14. Plaintiffs had also adequately demonstrated the falsity of Garrabrants' statement during the October 27, 2016 earnings conference call denying that BofI had any interest credit exposure ownership of any loan to Galanis. *Id.* at 17. The Complaint also demonstrated that it was false for BofI to issue a press release on March 31, 2017, saying that it has received no indication of and has no knowledge regarding the money laundering investigation. *Id.* at 18.

With these three false statements in mind, the Court next addressed whether Plaintiffs sufficiently alleged loss causation. The Court first considered the statement that Erhart's allegations were disconnected from reality. Plaintiffs claimed that this

6

statement was revealed to be false through the *Seeking Alpha* article. The Court noted that the information relied upon by the article's author was already public, and found that the author did not engage in any kind of specialized analysis. *Id.* at 20-21.

With respect to the October 27, 2016 denial of any loans to Galanis, the Court noted that Plaintiffs had failed to allege a corrective disclosure that occurred after the statement was made. *Id.* at 22. Finally, the Court addressed the March 31, 2017 press release in which BoI denied receiving any indication or having any knowledge of the money laundering investigation. Plaintiffs identified the corrective disclosure of this statement as the October 25, 2017 *New York Post* article stating that BofI had been under SEC investigation. The Court found that this article did not disclose any previously nonpublic information. *Id.* at 23. Because the *Probes Reporter* obtained its information through a FOIA request, the Court found information to be publicly available. *Id.* at 24.

Plaintiffs have now filed a Second Amended Complaint, hoping to cure the previous deficiencies. Plaintiffs again bring claims for violation of Sections 10(b) and 20(a) of the Exchange Act. Defendants move to dismiss the SAC, contending that the "new allegations in the SAC do not 'cure the deficiencies' in the CAC identified in this Court's order granting defendants' motion to dismiss." Defs.' Mem. at 2.

## II. DISCUSSION

A. <u>Legal Standard</u>

A Rule 12(b)(6) motion attacks the complaint as not containing sufficient factual allegations to state a claim for relief. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

7

17cv667-GPC-KSC

content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

A claim of securities fraud must satisfy the dual pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Rule 9(b) requires the complaint to state with particularity the circumstances constituting fraud. Satisfaction of this heightened standard requires delineating "the time, place, and specific content of the false representations as well as the identies of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986)). The complaint must also indicate "what is false or misleading about a statement, and what it is false," and "be specific enough to give defendants notice of the particular misconduct that they can defend against the charge and not just deny that they have done nothing wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). In the Ninth Circuit, Rule 9(b)'s heightened pleading standard applies to all elements of a securities fraud claim, including loss causation. *Or. Pub. Empls. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

The PSLRA requires that a securities fraud complaint "plead with particularity both falsity and scienter" by specifying "each statement alleged to have been misleading, the reason or reasons why the statement is misleading." *Id.* at 990-91 (quoting *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002)).

B.  Analysis

    1.  Section 10(b) Claims

To show that Defendants violated Rule 10b-5, Plaintiffs must demonstrate: (1) "a material misrepresentation or omission by the defendant," (2) scienter, (3) "a connection between the misrepresentation or omission and the purchase or sale of a security," (4) "reliance upon the misrepresentation or omission," (5) "economic loss," and (6) "loss causation." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-*

*Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017) (quoting *Matrixx Initiatives v. Siracusano*, 563 U.S. 27, 37-38 (2011)).

### a. Alleged Misrepresentations or Omissions

For purposes of a securities fraud claim, a "statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Hewlett-Packard*, 845 F.3d at 1275 (quoting *Berson v. Applies Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008)). "To be misleading, a statement must be 'capable of objective verification.'" *Id.* (quoting *Apollo*, 774 F.3d at 606). For example, 'puffing' – expressing an opinion rather than a knowingly false statement of fact – is not misleading." *Id.* (quoting *Apollo*, 774 F.3d at 606)).

#### i. Statements re: Erhart Accusations

Plaintiffs first point to a statement on March 14, 2016, in BofI's Form 8-K. BofI stated that Dentons "found no support for the conclusions of Mr. Erhart in the Complaint that the Bank or management engaged in wrongdoing or acts of fraud or impropriety." *Id.* ¶ 67. This Court previously found that nothing suggested that this statement was misleading, and the Court finds the same here. Order, ECF No. 37 at 12. Plaintiffs point to no allegation in their SAC that Dentons did not reach the conclusion suggested in the statement.

#### ii. Loans to Criminals

Next, on April 18, 2016, BofI issued a press release stating that "[t]he absence of public enforcement actions highlight how disconnected [Erhart's] allegations are from the reality of BofI's highly compliant and top-performing business." SAC ¶ 68. Bifurcating this statement, the first part – the absence of public enforcement actions – has not been demonstrated to be misleading. The SAC does not allege that there was any public enforcement action at the time of this statement. The second part of this statement, however, is different. Assuming the truth of Erhart's allegations that BofI was lending to criminals, the statement that his allegations are disconnected from reality is false.

9

17cv667-GPC-KSC

On October 27, 2016, Garrabrants stated during an earnings conference call that "BofI has no interest credit exposure ownership of any loan, any kind of loan to Jason Galanis or any loan to Jason Galanis who is a guarantor including the $7 million loan." SAC ¶ 92. As the Court stated in its previous Order, the Court "assumes that the contents of the *Seeking Alpha* article creates a reasonable inference that BofI did, in fact, lend money to Galanis." Order, ECF No. 37 at 17. Whether the SAC sufficiently alleges that this statement caused Plaintiffs harm is addressed separately below.

Earlier, on April 28, 2016, and August 25, 2016, BofI issued its financials for the quarter ending on March 31, 2016, and for the quarter and fiscal year ending on June 30, 2016. SAC ¶¶ 69, 80. In the Court's dismissal order, the Court noted that the complaint did not explain how these statements are misleading. ECF No. 37 at 13. Here, Plaintiffs allege no additional facts to explain how the financials are false or misleading. Nor have Plaintiffs shown that BofI's failure to disclose the loan to Galanis, a "criminal", on these forms is actionable. As the Court's prior order noted, "Plaintiffs offer no reason to believe that the contents of BofI's financial and operating results gave the impression that it was not lending to" criminals. Order, ECF No. 37 at 13; *see also In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004), aff'd sub nom. *Albert Fadem Tr. v. Citigroup, Inc.*, 165 F. App'x 928 (2d Cir. 2006) ("Plaintiff's allegation that Citigroup's failure to disclose that its revenues were derived from 'unsustainable and illegitimate sources' violated section 10(b) is likewise unavailing, for the federal securities laws do not require a company to accuse itself of wrongdoing.").

### iii. Investigations

On April 28, 2016, Garrabrants stated that BofI "is in strong regulatory standing, with no enforcement actions, has not been fined a single dollar by any regulatory agency," has not been required to modify its business practices, and "remain[s] in excellent regulatory standing." SAC ¶ 71. Defendants made similar statements on October 27, 2016, and January 21, 2017. *Id.* ¶¶ 92, 97. Plaintiffs do not point to any allegations in the SAC that BofI was the subject of any enforcement action, had been

fined, or had been required by regulators to alter any of the bank's practices. Moreover, this Court has previously found that the statements that BofI was in "strong" and "excellent" regulatory standing are too vague to be actionable. Order, ECF No. 37 at 14.

On August 2, 2016, Garrabrants stated that in an earnings conference call: "So we've not been asked any question or received any inquiry from any agency, including the SEC that would suggest concerns regarding financial misrepresentation, financial results, estimates, or other matters that would require an 8-K." SAC ¶ 78. Garrabrants later stated, "We have not been asked any questions that or received any inquiry that would suggest any concerns about our financials, financial misrepresentations, financial results estimates or anything else that would require the filing of an 8-K, meaning that would be material." *Id.* The Court previously noted that Garrabrants did not deny that BofI was in contact with regulators. Rather, Garrabrants stated, "as I've said on past calls, the nature of being a regulated entity is that we've constant dialogue with regulators, including the OCC, SEC, FDIC and the Fed." SAC ¶ 78.

With that full context of Garrabrants' statements in mind, the issue is whether "in the course of that dialogue with regulators, BofI was informed that the SEC investigation had reached a point that triggered a duty to disclose such inquiries to BofI investors by way of a Form 8-K." Order, ECF No. 37 at 15. Plaintiffs concede that "the truth of this statement turns on whether the investigation was material." Pls.' Opp., ECF No. 44 at 8. Plaintiffs must plead with specificity the materiality of the investigation because the falsity of Garrabrants' statement hinges on whether the investigation was material or not. Therefore, Plaintiffs must explain, in accordance with Rule 9(b)'s heightened standard, why the SEC investigation was material in order to demonstrate that Garrabrants made a false or misleading statement.

"[T]o fulfill the materiality requirement there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (citation and quotation marks omitted). Plaintiffs

do not explain how the investigation was material. Rather, Plaintiffs conclusorily assert that it should have been disclosed "because it was material." Pls.' Opp., ECF No. 44 at 9.

Not all investigations are material. For example, in *In re Lions Gate*, the court found that "the plaintiffs have failed to allege that the investigation itself was material in that it 'significantly altered the total mix of information' available to an investor." 165 F. Supp. 3d 1, 13 (S.D.N.Y. 2016) (quoting *Basic*, 485 U.S. at 231-32). There, the court noted that the $7.5 million civil penalty was less than 1% of the company's revenue, a percentage "much lower than the five percent numerical threshold that the Court of Appeals for the Second Circuit has determined is a 'good starting place for assessing the materiality of the alleged misstatement.'" *Id.* (quoting *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009)). Here, Plaintiffs have not alleged with sufficient detail that the financial implications of the investigation made such investigation material. And, like in *In re Lions Gate*, "plaintiffs do not explain any qualitative factors that would plausibly show materiality." *Id.* at 14. Therefore, Plaintiffs have not sufficiently demonstrated that Garrabrants' statement was misleading.

Plaintiffs also contend that the opening of a formal investigation by the SEC was a material proceeding that was required to be disclosed pursuant to 17 C.F.R. § 229.103 ("Item 103"). Under Item 103, a company is required to "[d]escribe briefly any material pending legal proceedings . . . known to be contemplated by governmental authorities." 17 C.F.R. § 229.103. "An investigation on its own is not a 'pending legal proceeding' until it reaches a stage when the agency or prosecutorial authority makes known that it is contemplating filing suit or bringing charges." *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 272 (S.D.N.Y. 2012) (quoting David M. Stuart, David A. Wilson, *Disclosure Obligations under the Federal Securities Laws in Government Investigations*, 64 Bus. Law. 973 (2009)). Plaintiffs point to no allegations that the SEC had made it known that it was contemplating filing suit or bringing charges; thus, Plaintiffs have not adequately shown that this was an actionable omission.

Finally, on March 31, 2017, BofI stated in a press release that it has received no indication of, and has no knowledge regarding, such purported money laundering investigation. SAC ¶ 101. The Court previously found that Plaintiffs had demonstrated this statement to be false. Order, ECF No. 37 at 18.

In sum, Plaintiffs have adequately pleaded as false or misleading the following statements: 1) the April 18, 2016 press release stating that Erhart's allegations are disconnected from reality, SAC ¶ 68; 2) the October 27, 2016 statement that "BofI has no interest credit exposure ownership of any loan, any kind of loan to Jason Galanis or any loan to Jason Galanis who is a guarantor including the $7 million loan," *id.* ¶ 92; and 3) the March 31, 2017 press release that BofI has received no indication of, and has not knowledge regarding of the money laundering investigation, *id.* ¶ 101. The Court next addresses whether Plaintiffs have sufficiently pleaded loss causation as to these actionable statements.

### b. Loss Causation

Loss causation is an element of a Rule 10-b5 claim. *Dura Pharms., Inc. v. Bruodo*, 544 U.S. 336, 341-42 (2005). To plead loss causation, a plaintiff "must plausibly allege that the defendant's fraud was *revealed* to the market and *caused* the resulting losses." *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014) (internal quotation marks omitted). As indicated above, this must be pleaded with particularity. *Apollo*, 774 F.3d at 605. "The misrepresentation need not be the sole reason for the decline in value of the securities, but it must be a substantial cause." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted).

To prove loss causation, Plaintiffs point to "corrective disclosures" of the alleged misrepresentations. "While a corrective disclosure need not be an outright admission of fraud to survive a motion to dismiss, the disclosure of a mere risk or potential for fraud . . . is insufficient to establish loss causation." *In re BofI Holding, Inc.*, No. 3:15-cv-2324-GPC-KSC, 2018 WL 1410729, at *3 (S.D. Cal. Mar. 21, 2018) (internal quotations omitted). A "corrective disclosure must be relevant to the alleged misrepresentation at

13

issue; it must 'relate back to the misrepresentation and not to some other negative information about the company.'" *Id.* (quoting *Bonnano v. Cellular Biomedicine Grp., Inc.*, No. 3:15-cv-1795-WHO, 2016 WL 4585753, at *3 (N.D. Cal. Sept. 2, 2016)).

### i. Statement that Erhart's Allegations are Disconnected From Reality

On April 18, 2016, BofI issued a press release stating that "[t]he absence of public enforcement actions highlight how disconnected [Erhart's] allegations are from the reality of BofI's highly compliant and top-performing business." SAC ¶ 68. Plaintiffs contend that the October 26, 2016 *Seeking Alpha* article disclosed for the first time that the allegations in Erhart's complaint were true and that BofI was making loans to criminals.

Plaintiffs do not dispute that the information relied about by the author of this article was already public; however, Plaintiffs contend that the author engaged in a specialized analysis of facts not widely known to the market. The SAC alleges that the analysis performed by the article's author "provides additional or more authoritative fraud-related information that the publicly available information," by "connecting individual pieces of unrelated complex economic data and explaining the implications of such connected information." SAC ¶ 120. The SAC further alleges that this information is understandable only through the author's analysis and was no previously readily digestible by the marketplace. *Id.* These allegations by the Plaintiffs are quite conclusory. Plaintiffs point to no specifics in the article that provide a sufficient factual background to demonstrate that the information was "complex" or "not previously readily digestible." On the other hand, looking to the relevant portions of the article as quoted in the SAC, the analysis seems straightforward. The article explains that BofI "funds an entity called ECC SPE that is tied to Emerald Creek Capital." *Id.* ¶ 117. Galanis took out a $7 million loan from Emerald Creek, and then ECC SPE transferred the collateral behind the loan to BofI. *Id.* There is no indication that a specialized

analysis was utilized. Plaintiffs have not sufficiently alleged this article as a corrective disclosure.

### ii. Statement about No Loan to Galanis

On October 27, 2016, Garrabrants stated during an earnings conference call that "BofI has no interest credit exposure ownership of any loan, any kind of loan to Jason Galanis or any loan to Jason Galanis who is a guarantor including the $7 million loan." SAC ¶ 92. The Court previously found that there was no corrective disclosure of this statement. And here, Plaintiffs again have not pointed the Court to a corrective disclosure issued after this earnings call. Plaintiffs have failed to show loss causation for this statement.

### iii. March 31, 2017 Press Release Stating No Knowledge of Money Laundering Investigation

On March 31, 2017, BofI stated in a press release that the "Company has received no indication of, and has no knowledge regarding, such purported money laundering investigation." SAC ¶ 101. Plaintiffs point to two separate articles and contend they are each a corrective disclosure of this statement. First, Plaintiffs allege that the April 6, 2017 *New York Post* article disclosed for the first time that the FDIC was involved in the money laundering investigation. This article reports that "Kristi is telling authorities – including the San Diego US Attorney, the Securities and Exchange Commission and the FDIC – what she knows about alleged lax accounting and possible money laundering at BofI, court papers show." SAC ¶ 126. The article further stated that the "FDIC didn't immediately respond to an e-mail seeking comment on its investigation, which hasn't previously been reported." *Id.* SAC ¶ 126.

Plaintiffs take the position that the article does not state that the court papers were the source for the author's statement that the FDIC was also conducting its own investigation. In other words, Plaintiffs construe the article as saying that court papers show that Procopio is telling authorities what she knows about possible money laundering at BofI, but that court papers did not reveal she is telling the FDIC. That is

15

one possible reading. But another possible reading is that the phrase "court papers show" apply to all of the previously reported information in that sentence, which includes that Procopio is telling the FDIC what she knows about possible money laundering. Only one of these readings can be correct, for they are mutually exclusive. "When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)).

Plaintiffs have not advanced any persuasive argument or factual allegations in support of their theory that court papers did not show that Procopio was telling the FDIC what she know about possible money laundering at BofI. In fact, the October 25, 2017 *New York Post* article referenced in the SAC states, "In April, The Post first reported that the Justice Department, the SEC, *the Federal Deposit Insurance Corp.*, and the US Treasury's Office of the Inspector General were investigating the bank, *citing public documents obtained in an unrelated case.*" ECF No. 32-9 at 1 (emphases added). In other words, the *New York Post* has stated that the April 6, 2017 article reported that public documents showed that the FDIC was investigating BofI.

Moreover, the SAC does not contain any allegations that at the time BofI issued its press release on March 31, 2017, the FDIC had launched a money laundering investigation into BofI. Nor does the SAC allege that the April 6, 2017 *New York Post* article revealed that the FDIC had begun its investigation prior to March 31, 2017. Therefore, this is not a corrective disclosure that relates back to any misrepresentation.

The second alleged corrective disclosure Plaintiffs point to is the October 25, 2017 *New York Post* article. Plaintiffs allege that this article disclosed for the first time the extent that BofI was under a 16-month formal SEC investigation. The Court previously

found that this article did not disclose any previously nonpublic information. The article states that *Probes Reporter* obtained its information through a FOIA request. This Court previously explained in detail why information about a company that is available from its federal regulator through the FOIA is publicly available to an "information-hungry" market. Order, ECF No. 37 at 24-26.

Plaintiffs take the position that though it may have been possible for investors to submit FOIA requests, that does not mean the information was provided to the public prior to October 25, 2017. In support of this contention, the SAC makes much of the possible time it could take for the SEC to process and fulfill a FOIA request. Plaintiffs allege that "there have been instances where the SEC has stated that it would take years to provide information to the requestor." SAC ¶ 135. This allegations only make it possible, not plausible, that the SEC would take a substantial amount of time to respond to any FOIA requests regarding BofI. Moreover, the SAC concedes that "the majority of requests do not take years to fulfill" and "the response time for each request will be different." *Id.*

The SAC also alleges that "the SEC often refuses to provide information regarding investigations in response to FOIA requests." This generalized allegation is too vague and lacks specific factual details to make it plausible that the SEC would not disclose through a FOIA response any information regarding its investigation into BofI. Furthermore, this allegation is contradicted by the fact that *Probes Reporter* obtained documents through FOIA from the SEC's probe into BofI.

The SAC alleges that between July 28, 2017, and October 25, 2017, three individuals made FOIA requests to the SEC – Bradley Berning, Darb Reerg, and Wilbur Huggens. SAC ¶ 133. The SAC alleges that the FOIA requests for these three individuals are marked "closed," but that does not necessarily mean the information requested was provided to them prior to October 25, 2017. SAC ¶ 134. In support of this allegation, the SAC points to an online *New York Times* blog post that reports that the SEC responded a FOIA request about Goldman Sachs by noting that the "request has

17

been closed" though the requested records were not yet provided. *Id.* Again, this allegation is too speculative to provide sufficient factual background that plausibly shows BofI's SEC investigation was not publicly available.

Plaintiffs contend that the SAC explains how any FOIA response had not been transmitted to the public, as to counterbalance the misleading impression created by Defendants. Pls.' Opp. at 21. The SAC explains how it appears that Berning did not have any documents received that would contradict Defendants' statements. However, the SAC admits that "Plaintiffs have no knowledge as to what information Reerg and Huggens requested or may have received." *Id.* ¶ 142.

As the Court has previously found, information available through FOIA is publicly available. The *Probes Reporter* obtained documents from the SEC's investigation into BofI through FOIA. Plaintiffs have not offered any reason to believe that the SEC's investigation was not publicly available.[1] The SAC therefore fails to allege with particularity a revelation of the falsity of BofI's March 31, 2017 press release. In sum, Plaintiffs have not adequately pleaded a violation of Section 10(b).

2. Section 20(a) Claim

Plaintiffs' section 20(a) claim is derivative of their section 10(b) claims. Because the Court has concluded that the SAC fails to state a claim for violation of section 10(b), it also fails to state a claim for violation of section 20(a).

### III. CONCLUSION

The Court concludes that Plaintiffs' Second Amended Complaint fails to state a claim for violation of sections 10(b) or 20(a) of the Securities Exchange Act. This was Plaintiff's third iteration of its complaint, and Plaintiffs have not requested leave to file a

---

[1] Plaintiffs' citation to cases analyzing the "truth-on-the-market" defense is not persuasive. "[T]he 'truth-on-the-market' defense is inapplicable in this instance. The defense applies with respect to negating the element of reliance." *Cowan v. Goldcorp*, No. CV166391FMOAFMX, 2017 WL 5495734, at *5 n.9 (C.D. Cal. Sept. 6, 2017).

third amended complaint. Moreover, it appears that any further amendment would not survive another motion to dismiss. The Court concludes that another opportunity to amend is not warranted. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("The fact that Zucco failed to correct these deficiencies in its Second Amended Complaint is a strong indication that the plaintiffs have no additional facts to plead.") (internal quotation marks omitted). As a result, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** the Plaintiffs' Second Amended Complaint with prejudice.

**IT IS SO ORDERED**.

Dated: December 7, 2018

Hon. Gonzalo P. Curiel
United States District Judge