UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BAR MANDALEVY, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

BOFI HOLDING, INC., GREGORY GARRABTRANTS, ANDREW J. MICHELETTI, ESHEL BAR-ADON and PAUL J. GRINBERG,

Defendants.

Case No.: 17cv667-GPC-KSC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT ON GROUNDS THAT PLAINTIFFS HAVE INADEQUATELY PLEADED SCIENTER**

**[ECF No. 66]**

Before the Court is Defendants' Supplemental Motion to Dismiss Plaintiffs' Second Amended Complaint. ECF No. 66. On November 3, 2020, the Ninth Circuit affirmed in part, reversed in part, and remanded the Court's previous order granting Defendants' motion to dismiss the second amended complaint. *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198 (9th Cir. 2020). In its decision, the Ninth Circuit stated that it would not address the alternative ground that Plaintiffs did not adequately plead scienter because this Court had not passed on the issue. *Id.* at 1209. On remand, the Court therefore permitted the Parties to file additional briefing as to whether Defendants'

motion to dismiss should be granted on the grounds that Plaintiffs have inadequately pleaded scienter. ECF No. 64.

The motion has been fully briefed. ECF Nos. 66, 67, 68. The Court finds this matter suitable for disposition without oral argument pursuant to Civ. L.R. 7.1(d)(1) and accordingly VACATES the hearing on this matter currently set for March 5, 2021. For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' motion.

## I. BACKGROUND

A. Factual History

The Court provides a brief history of the factual allegations relevant to this motion. BofI Holding operates as the holding company for BofI federal bank. SAC, ECF No. 38 ¶ 2. BofI provides consumer and business banking products in the United States. *Id.* BofI's common stock trades on the NASDAQ. *Id.* ¶ 3. Plaintiffs in this case purchased shares of BofI and claim that the revelation of a number of Defendants' misrepresentations caused the share price to drop. *Id.* ¶¶ 19, 24. Defendant Gregory Garrabrants has served at all relevant times as BofI's CEO, President, and Director. *Id.* ¶ 26. Defendant Andrew Micheletti served as BofI's Executive Vice President and CFO. *Id.* ¶ 27. Defendant Eshel Bar-Adon served as the Chief Legal Officer and Executive Vice President. *Id.* ¶ 28. Defendant Paul Grinberg served as a member of the Board of Directors and as Chairman of the Board since February 16, 2017. *Id.* ¶ 29.

Plaintiffs claimed that Defendants made a number of false or misleading statements on two subjects: the company's loans to criminals and governmental investigations into BofI. However, the only statement found to be actionable relates to governmental investigations into BofI.

On May 28, 2015, the SEC opened a Matter Under Inquiry ("MUI") into BofI. *Id.* ¶ 49. An MUI is an informal investigation and is generally less serious in nature than a formal investigation. *Id.* However, on February 11, 2016, the SEC closed the MUI and launched a formal investigation. *Id.* ¶ 51. In accordance with its investigation, on

February 22, 2016, SEC subpoenaed BofI regarding: 1) related party transactions; 2) activities of the board, audit committee and a management regarding conflicts of interest; and 3) loans given to two specific entities. *Id.* ¶ 52. On October 19, 2016, the SEC expanded its investigation and issued a second subpoena that sought numerous documents related to single-family residential loans extended to non-resident aliens. *Id.* ¶ 55. According to a confidential witness identified as CW1, Garrabrants and Micheletti were aware of the formal SEC probe prior to March 2016. *Id.* ¶ 58. Moreover, CW1 discussed various federal investigations with Garrabrants in August 2015. *Id.* ¶ 60.

On March 31, 2017, the *New York Post* published an article entitled, "Feds probe Bank of Internet for possible money laundering." *Id.* ¶ 100. The article stated that federal agents are investigating BofI for possible money laundering. *Id.* The article disclosed that the Justice Department, Office of the Comptroller of the Currency, SEC, and Treasury Department are all conducting an investigation. *Id.* The *New York Post* quoted Defendant Bar-Adon as stating that "there are no material investigations that would require public disclosure and BofI remains in good regulatory standing." *Id.*

That same day, BofI issued a press release in response to the *New York Post* article. *Id.* ¶ 101. BofI stated that the article "is nothing more than a rehash of baseless allegations that first surfaced over two years ago, and have been soundly refuted by BofI in court filings and on conference calls." *Id.* The press release included the following paragraph which features the allegedly false or misleading statement in the last sentence:

> The apparent basis for the headline that the Bank is under a federal money laundering probe is an assertion that "BofI allegedly filed incorrect call reports to hide loans made to foreign nationals without requiring them to provide a tax identification number." This allegation is inexplicable given that applicable law does not require tax identification numbers of non-resident aliens who are not engaged in a trade or business in the United States. **The Company has received no indication of, and has no knowledge regarding, such purported money laundering investigation.**

ECF No. 66-4 (emphasis added).

On October 25, 2017, the *New York Post* published another BofI article entitled, "Bank of Internet Was under 16-month SEC investigation." SAC ¶ 130. The article disclosed that BofI was subject of a 16-month formal SEC investigation until June 2017. *Id.* ¶ 16. The article reported that the SEC investigation "was focused on alleged conflicts of interests, auditing practices, and loans made to two entities, according to subpoenas and government documents obtained by Probes Reporter, a publisher of investment research." ECF No. 32-9 at 1. These documents were "obtained through the Freedom of Information Act." *Id.*

B. Procedural History

On April 3, 2017, Plaintiffs filed a Class Action Complaint against Defendants which asserted a claim under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), by way of violation of the SEC's Rule 10b-5, 17 C.F.R. § 240.10b-5. Plaintiffs also alleged a count for violation of Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a). Plaintiffs claimed that Defendants violated Sections 10(b) and 20(a) by making misrepresentations about BofI's loans to criminals and government investigations.

Defendants countered with a Motion to Dismiss. ECF No. 32. Defendants contended that Plaintiffs failed to plead particularized facts showing that Defendants made misstatements and that Plaintiffs failed to plead loss causation. On June 19, 2018, the Court granted Defendants' Motion to Dismiss. ECF No. 37. The Court found that Plaintiffs had failed to plead several of the alleged statements were false or misleading. However, the Court found that Plaintiffs had adequately demonstrated that it was false for BofI to issue a press release on March 31, 2017, saying that it has received no indication of and has no knowledge regarding the money laundering investigation. *Id.* at 18. Nevertheless, the Court found dismissal was warranted because Plaintiffs had not adequately alleged loss causation with respect to this statement. Plaintiffs identified the corrective disclosure of this statement as the October 25, 2017 *New York Post* article stating that BofI had been under SEC investigation. The Court found that this article did

not disclose any previously nonpublic information. *Id.* at 23. Because the *Probes Reporter* obtained its information through a Freedom of Information Act ("FOIA") request, the Court determined the information was publicly available. *Id.* at 24.

Plaintiffs then filed a Second Amended Complaint ("SAC"), hoping to cure the previous deficiencies. Plaintiffs again brought claims for violation of Sections 10(b) and 20(a) of the Exchange Act. Defendants moved to dismiss, arguing Plaintiffs had failed to cure the deficiencies of the previous complaint. ECF No. 42. The Court once again ruled that Plaintiffs had adequately alleged the falsity of the statement in the March 31, 2017 press release, but failed to plead loss causation because the alleged corrective disclosure contained only publicly available information. ECF No. 50 at 18. Finding Plaintiffs could not plead facts to remedy the deficiencies in the SAC, the Court granted Defendants' motion to dismiss with prejudice. *Id.*

Plaintiffs appealed. On November 3, 2020, the Ninth Circuit affirmed in part, reversed in part, and remanded the Court's order dismissing the SAC. *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1207 (9th Cir. 2020). In relevant part, the court found that (1) this Court erred in concluding that because the information in the October 25, 2017 *Post* article was obtained through a FOIA request, it could not qualify as a corrective disclosure as a matter of law; (2) that Plaintiffs adequately alleged that the information in the October 25, 2017 *Post* article had not been publicly disclosed prior to its publication; and (3) that Plaintiffs had adequately alleged that the October 25, 2017 *Post* article was in fact "corrective" of the March 31, 2017 press release statement. *Id.* at 1204–08. The Ninth Circuit also declined to reach Defendants' argument regarding scienter because this Court had not passed on the issue. *Id.* at 1209.

Following the remand, the Court permitted the Parties to file additional briefing relating to Defendants' argument, presented in their original motion to dismiss the SAC, that Plaintiffs had failed to adequately plead the element of scienter. ECF No. 64.

\ \ \

\ \ \

## II. DISCUSSION

A. Legal Standard

A Rule 12(b)(6) motion attacks the complaint as not containing sufficient factual allegations to state a claim for relief. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

A claim of securities fraud must satisfy the dual pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Rule 9(b) requires the complaint to state with particularity the circumstances constituting fraud. Satisfaction of this heightened standard requires delineating "the time, place, and specific content of the false representations as well as the identifies of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986)). In the Ninth Circuit, Rule 9(b)'s heightened pleading standard applies to all elements of a securities fraud claim. *Oregon Pub. Empls. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

The PSLRA also requires that a securities fraud complaint plead scienter with particularity. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990–91 (9th Cir. 2009) (quoting *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002)). To meet this standard, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007); 15 U.S.C. § 78u-4(b)(2)(A).

To satisfy the requisite state of mind element, "a complaint must 'allege that the defendant[ ]made false or misleading statements either intentionally or with deliberate recklessness.'" *Zucco*, 552 F.3d at 991 (citation omitted). To determine whether the facts give rise to a "strong inference that the defendant acted with the required state of mind", if no individual allegation is sufficient standing alone, the court must determine whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Tellabs*, 551 U.S. at 322–23; *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) (quoting *Tellabs*, 551 U.S. at 326) (reiterating that courts should review all the allegations in the complaint "holistically" to determine whether scienter has been properly pled). In reviewing the complaint holistically, vague or ambiguous allegations can be considered to determine whether the complaint as a whole raises a strong inference of scienter. *Zucco*, 552 F.3d at 1006 (quoting *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008)). However, "[i]t does not suffice that a reasonable factfinder plausibly could infer . . . the requisite state of mind." *Tellabs*, 551 U.S. at 313.

In conducting the analysis, the court must also "take into account plausible opposing inferences" that could weigh against a finding of scienter. *Tellabs*, 551 U.S. at 322. "Even if a set of allegations may create an inference of scienter greater than the sum of its parts, it must still be at least as compelling as an alternative innocent explanation." *Zucco*, 552 F.3d at 1006; *see also Tellabs*, 551 U.S. at 313 (the inference of scienter must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent").

\ \ \

\ \ \

\ \ \

\ \ \

B. Analysis[1]

The only issue for which the Court sought additional briefing on this motion to dismiss is whether Plaintiffs have adequately pleaded scienter. ECF No. 64. Defendants argue that Plaintiffs have failed to plead with sufficient particularity facts that would show knowledge of any money laundering investigation at the time of the alleged false statement as to both BofI and the Individual Defendants. Plaintiffs argue that the prior rulings of this Court and the Ninth Circuit compel a finding that Defendants acted with scienter, and in any case Plaintiffs have alleged specific facts that raise a strong inference of scienter.

1. Scienter Generally

The question for the Court is whether the facts in the SAC raise a "strong inference" that Defendants[2] made the false statement in the March 31, 2017 press release—that "[t]he Company has received no indication of, and has no knowledge regarding, such purported money laundering investigation"—intentionally or with deliberate recklessness. *See Zucco*, 552 F.3d at 991.

As a threshold issue, the Court notes that many of Defendants' arguments hinge on their position that the phrase "such purported money laundering investigation" refers to a "criminal DoJ-led money laundering investigation" and would not encompass the SEC

---

[1] Defendants ask the Court to take judicial notice of three *Post* articles and the March 31, 2017 press release referenced in the SAC. ECF No. 66-2. Because these documents are incorporated by reference in the SAC, the Court need not take judicial notice of the articles to consider them. *See Khoja v. Orexigen Therapeutics*, Inc., 899 F.3d 988, 998 (9th Cir. 2018) (noting that incorporation by reference and judicial notice are separate doctrines permitting the Court to consider materials outside of the complaint on a motion to dismiss).

[2] This section refers to Defendants generally, as do much of the Parties' briefing, to most easily address the Parties' general disputes that do not pertain to any particular Individual Defendant. However, as discussed *infra*, the Court does find that at least one Individual Defendant had the requisite scienter and thus BofI can be held liable. *See Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 743–45 (9th Cir. 2008) (noting that "collective scienter" theory had not been ruled out by the Ninth Circuit, but that "the most straightforward way to raise [an inference of scienter] for a corporate defendant will be to plead it for an individual defendant").

investigation that was ultimately revealed in the October 25, 2017 *Post* article. *E.g.*, ECF No. 66-1 at 13; ECF No. 68 at 6. Defendants therefore argue that Plaintiffs have not alleged scienter, *and* that the statement was not false or misleading, because Plaintiffs have failed to plead that Defendants had knowledge of a criminal investigation by the DOJ into money laundering at the time of the statement. This Court already determined that Plaintiffs adequately alleged the statement was false, because Plaintiffs had alleged that at the time of the statement, the SEC was investigating BofI and that CW2 stated there was "no way" BofI officials would not have known about ongoing investigations. ECF No. 37 at 18, ECF No. 50 at 13. Nowhere did the Court suggest that the statement in the press release should be interpreted only as referring to money laundering investigations led by the DOJ Criminal Division; in any case, the *Post* article referenced the involvement of several federal agencies, including the SEC, and the paragraph of the press release in which the statement appears does not limit the statement to criminal DOJ investigations and was broad enough to disclaim knowledge of any of the government probes referenced in the March 31, 2017 *Post* article. *See* ECF Nos. 66-3, 66-4.

Additionally, the Ninth Circuit held that the October 25, 2017 *Post* article that referred to the SEC investigation qualified as a corrective disclosure of the statement in the press release even though it "did not precisely mirror BofI's denial," *Grigsby*, 979 F.3d at 1208, which necessarily means the Ninth Circuit viewed the revelations in the October article about the SEC investigation as inconsistent with BofI's prior statement that it was had no indication or knowledge of "such purported money laundering investigation;" otherwise, they would not have been corrective of anything. The Court declines to permit Defendants to relitigate the statement's falsity at the pleading stage.

The Court therefore easily finds that the SAC, viewed holistically, raises a strong inference that BofI intentionally made the misleading press release statement or acted with deliberate recklessness as to its falsity. First, Plaintiffs allege that high level members of BofI's management knew that BofI was the subject of an SEC investigation at the time of the March 31, 2017 statement. CW1 learned of the formal SEC probe from

Garrabrants and Micheletti in March 2016. SAC ¶ 58. The SAC also alleges that the SEC issued subpoenas to BofI, directed to Bar-Adon, on February 22, 2016 and October 19, 2016. SAC ¶¶ 52, 55. The October 19, 2016 subpoena, in particular, sought documents related to single-family residential loans extended to non-resident aliens. *Id.* ¶ 55. The March 31, 2017 *Post* article specifically referenced alleged loans made to foreign nationals who did not provide tax identification numbers and tied these loans to money laundering allegations. ECF No. 66-3. Although Defendants argue that they are not required to obtain tax identification numbers, regardless of whether the *Post*'s description of the law regarding tax identification numbers was accurate, the article expressly connects what turned out to be the subject of the October 19, 2016 subpoena to the alleged federal money laundering probe. Plaintiffs thus raise a strong inference that Defendants knew that disclaiming having any indication of "such purported money laundering investigation" was misleading, yet intentionally responded in that manner, or that they at least made the statement with deliberate recklessness as to its falsity.

Defendants also argue that Plaintiffs have not presented a plausible motive to support the conclusion that Defendants acted with scienter, citing to *Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020). In *Nguyen*, the plaintiff alleged that the defendants made false and misleading statements suggesting their product was likely to be approved by the FDA, even though the FDA was almost certainly not going to approve defendants' product on the timeline defendants claimed. *Id.* at 415. The Ninth Circuit found that the plaintiff's theory of scienter was implausible because defendants would have nothing to gain from concealing the truth, given that the company would "face the inevitable fallout once [the] problem was revealed" when they failed to get FDA approval. *Id.* The court found it relevant that the defendants had not attempted to profit off the temporarily high stock prices by selling stock or the company in the interim. *Id.* But unlike in *Nguyen*, common sense supports Plaintiffs' theory here: by concealing and denying the existence of the money laundering investigation, Defendants' false statement would ward off a drop in stock prices and prevent the investigation from

affecting BofI's value. The Defendants here thus had something to gain from representing that BofI was not, in fact, under investigation for money laundering.

Plaintiffs' explanation is "at least as plausible" as the "alternative innocent explanation" that BofI knew of the SEC investigation, the SEC subpoena related to single-family residential loans extended to non-resident aliens, and that the March 31, 2017 *Post* article connected loans to foreign nationals with an alleged federal money laundering probe including the SEC, but did not realize their statement would serve "as some sort of blanket representation about" pending investigations other than a criminal investigation by the DOJ. ECF No. 66-1 at 15–16. The broad language of the statement, the fact that it was in response to an article regarding the investigation of BofI by multiple agencies including the SEC, and the fact that the article related the money laundering allegations to the lending practice that had been the subject of an SEC subpoena, renders this explanation less compelling than Plaintiffs'.[3] Even if Defendants had intended to word the press release carefully to avoid explicitly denying the existence of the particular SEC investigation, that does not foreclose the possibility that they intentionally phrased it broadly to attempt to dispel all suspicion raised by the *Post* article. The SAC therefore raises a strong inference that BofI made the false or misleading press release statement intentionally or with reckless disregard.

\ \ \

\ \ \

\ \ \

---

[3] The argument Defendants present in their reply memorandum—that Plaintiffs must show "on day X government agency Y was conducting an investigation into Z" and not "replace them with A or B or C"—is not persuasive. ECF No. 68 at 2–3. Plaintiffs allege that as of March 31, 2017, Defendants were aware of the formal SEC investigation that related in part to single-family residential loans extended to non-resident aliens, which the *Post* article had connected to money laundering. Viewing the SAC holistically and in light of the fact that the Ninth Circuit found the October *Post* article relating to the SEC investigation was a corrective disclosure, the allegations raise a strong inference that Defendants were aware the statement responding to the article in the press release would be misleading.

2. Scienter and Involvement of Individual Defendants

Defendants also contend that Plaintiffs have not pleaded with the requisite particularity facts that would show Individual Defendants acted with scienter or were involved in making the misrepresentation in the press release.[4] Plaintiffs oppose, arguing that the SAC alleges actual knowledge on the part of Individual Defendants and presents circumstances suggesting it would be "absurd to suggest that management was without knowledge" of the SEC investigation in March 2017. ECF No. 67 at 13 (quoting *South Ferry*, 542 F.3d at 786). Plaintiffs also assert that the Individual Defendants are liable for the false or misleading statement in the press release because their positions in the company gave them authority over BofI's statement.

*i. Whether each Individual Defendant was a 'maker' of the misrepresentation*

The Court first considers whether each of the individual defendants can be held liable under Section 10(b) for the allegedly misleading statement in the press release. "For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011); *see also In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1006 (N.D. Cal. 2017) (collecting cases applying *Janus* to corporate officers).

Several district courts applying *Janus* have found that a corporate officer's position alone, without additional allegations as to the officer's ability to control the contents of the statement at issue, does not suffice to render the officer a 'maker' of the statement. *E.g.*, *Hampton v. Aqua Metals, Inc.*, No. 17-CV-07142-HSG, 2020 WL 6710096, at *17 (N.D. Cal. Nov. 16, 2020) ("Here, there is no allegation that [defendant] signed any of

---

[4] Plaintiffs argue that Defendants' arguments relating to the personal involvement of Individual Defendants in the misrepresentation should be ignored because this Court limited briefing to "the issue of scienter." ECF No. 67 at 7 (quoting ECF No. 64). The Court will consider Defendants' arguments for the sake of completeness although they do not affect the Court's ultimate conclusion.

the SEC filings or press releases, nor are there any allegations that he was responsible for or had ultimate authority over their content."); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 1070116, at *9 (N.D. Cal. Feb. 27, 2018) (finding that plaintiffs had failed to plead specific facts showing certain corporate officers had ultimate authority over statements, including press releases, "as opposed to more senior Wells Fargo leadership"). However, although *Janus* recognized that the scope of liability under Rule 10b-5 is narrow, a plaintiff need not plead that the defendant directly issued the allegedly misleading statement. *See Janus*, 564 U.S. at 142. Rather, a plaintiff must plead sufficient facts to show that the defendant had the power and authority to control the content and issuance of the statement. *See In re Rocket Fuel, Inc. Sec. Litig.*, No. 14–CV–3998–PJH, 2015 WL 9311921, at *10 (N.D. Cal. Dec. 23, 2015) (finding allegations that individual defendants "possessed the power and authority to control the contents of the Company's press releases [and] investor and media presentations" sufficient to satisfy *Janus* and withstand motion to dismiss).

The Court finds that Plaintiffs have alleged specific facts at the motion to dismiss stage to adequately plead that Garrabrants, Micheletti, and Bar-Adon had the "ultimate authority" over the press release. While Plaintiffs' allegation that "Individual Defendants possess the power and authority to, and did, control the contents of BofI's . . . press releases" likely would not meet the particularity requirement standing alone, Plaintiffs provide additional factual allegations that plausibly suggest these Individual Defendants were the 'makers' of the press release statement under *Janus*. SAC ¶ 66. Plaintiffs allege that Garrabrants, as CEO, President, and Director, "was so involved in the day-to-day operations that essentially everyone at BofI reported to him." *Id.* ¶ 26. Micheletti, as CFO, "was very involved in the oversight of the Company's finances" and, according to confidential witnesses, actively discussed the response to the SEC probe with Garrabrants and others. *Id.* ¶¶ 27, 58, 63. Bar-Adon, the Chief Legal Officer and Executive Vice President, "was intimately involved in all legal and regulatory matters concerning the Company" and directly responded to the *Post* article that prompted the press release. *Id.*

¶¶ 28, 100. Although not dispositive, the Court also takes into account the reasonable inference that high-level officers who are alleged to have been intimately involved with the Company's response to the SEC investigation would play a part in ensuring the accuracy of BofI's public statements regarding such significant allegations in the press.

On the other hand, the SAC falls short in alleging Grinberg's authority over the press release with sufficient particularity. The allegations in the SAC pertaining to Grinberg mainly relate to Grinberg's signing of SEC filings, as well as an alleged related-party transaction relevant to the first SEC subpoena, prior to when the SEC expanded its investigation. SAC ¶¶ 53, 55, 80, 108. None of the confidential witnesses discuss Grinberg's involvement. *Id.* ¶¶ 58–63. Plaintiffs also do not allege Grinberg, who was then Chairman of the Board of Directors, was involved in the everyday operation of the business such that he would be responsible for BofI's press releases. The Court therefore finds that Plaintiffs have not alleged sufficient facts to show Grinberg was the 'maker' of the press release statement.

*ii. Whether each Individual Defendant had scienter*

"Where, as here, the Plaintiffs seek to hold individuals and a company liable on a securities fraud theory," the Court "require[s] that the Plaintiffs allege scienter with respect to each of the individual defendants." *Oregon Pub. Empls.*, 774 F.3d at 607 (*citing Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 743–44 (9th Cir. 2008)). Plaintiffs' allegations therefore must raise "a strong inference" that each Individual Defendant acted intentionally or with deliberate recklessness in the issuance of the press release statement. *See Tellabs*, 551 U.S. at 322–23; *Zucco*, 552 F.3d at 991.

As with their allegations regarding the Individual Defendants' personal involvement, Plaintiffs also raise a strong inference of scienter with respect to Garrabrants, Micheletti, and Bar-Adon. Plaintiffs allege specific facts to show that Garrabrants, Micheletti, and Bar-Adon had actual knowledge of the SEC investigation. Although the other confidential witnesses' testimony in this regard may fall short of the particularity requirement, CW1 stated that he or she learned of the formal SEC

investigation directly from Garrabrants and Micheletti in or around March 2016, before the press release. SAC ¶ 58. Bar-Adon, as the Chief Legal Officer, would have received the SEC subpoenas and also directly responded to the allegations in the *Post* article. *Id.* ¶¶ 28, 100. These specific factual allegations, in addition to the more general allegations regarding these three Defendants' involvement in responding to federal investigations of BofI and their role in company management, raise a strong inference that they knew of the SEC investigation and that it related in part to the potential money laundering issues raised by the *Post* article. *See South Ferry*, 542 F.3d at 784 ("Allegations that rely on the core-operations inference are among the allegations that may be considered in the complete PSLRA analysis.").

However, there are no other allegations regarding Grinberg's exposure to information regarding the SEC investigation, particularly with regard to the expanded scope of the investigation into matters that potentially touched on money laundering following the October 19, 2016 subpoena. "Where a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard," although "in some unusual circumstances," facts critical to a business's core operations may establish scienter. *South Ferry*, 542 F.3d at 784–85. Plaintiffs have not demonstrated that this case falls "into the exceedingly rare category of cases in which the core operations inference, without more, is sufficient under the PSLRA." *Id.* at 785 n.3. The pendency of an SEC investigation into a bank, even related to money laundering, is far from the "unusual circumstance[]" in which the Ninth Circuit has found "it would be absurd to suggest' that top management was unaware of" the underlying facts. *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989 (9th Cir. 2008); *South Ferry*, 542 F.3d at 785. In *Applied Signal*, although the plaintiffs had not pleaded specific facts that the CEO and CFO knew about the "stop-work orders" that they allegedly concealed from investors, the court found plaintiffs had adequately pleaded scienter because "it is hard to believe that they would not have known

about stop-work orders that allegedly halted tens of millions of dollars of the company's work." *Applied Signal Tech., Inc.*, 527 F.3d at 987–89. Here, Grinberg was a director rather than a member of management and Plaintiffs do not allege that he had personal involvement in responding to the SEC investigation. SAC ¶¶ 29, 58–63. It is therefore not inconceivable that Grinberg would have been ignorant of the fact that the SEC probe had expanded to include matters related to money laundering as referenced in the *Post* article.

Accordingly, the Court DENIES Defendants' motion to dismiss the Section 10(b) claims against Garrabrants, Micheletti, and Bar-Adon, and GRANTS Defendants' motion to dismiss the Section 10(b) claim against Grinberg. However, because Defendants did not previously raise this ground for dismissal and Plaintiffs could plead additional facts consistent with the SAC that could state a claim against Grinberg, the dismissal of this count will be with leave to amend. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber*, 806 F.2d at 1401).

2. Section 20(a) Claim

Plaintiffs' Section 20(a) claim is derivative of their Section 10(b) claims. Defendants challenge the Section 20(a) only on the basis that Plaintiffs have failed to state a primary violation of the securities laws. Because the Court finds Plaintiffs have stated a primary violation, the Court DENIES Defendants' motion to dismiss the Section 20(a) claim.

## III. CONCLUSION

The Court therefore VACATES the hearing on this matter and orders as follows. The Court:

1. **DENIES** Defendants' motion to dismiss the Section 10(b) claims against BofI, Garrabrants, Micheletti, and Bar-Adon;
2. **GRANTS** Defendants' motion to dismiss the Section 10(b) claim against Grinberg without prejudice; and
3. **DENIES** Defendants' motion to dismiss the Section 20(a) claim.

If Plaintiffs wish to file an amended complaint to attempt to cure the deficiencies with respect to the Section 10(b) claim against Grinberg, they must do so within **20 days** of this order.

**IT IS SO ORDERED**.

Dated: March 2, 2021

Hon. Gonzalo P. Curiel
United States District Judge