1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9         SOUTHERN DISTRICT OF CALIFORNIA

10

11   BAR MANDALEVY, individually, and          Case No.:  3:17-CV-667-GPC-MSB
     on behalf of all others similarly situated,
12                                              **ORDER:**
                                     Plaintiff,
13                                              **(1) GRANTING MOTION FOR**
     v.                                         **FINAL CERTIFICATION OF THE**
14                                              **PROPOSED SETTLEMENT CLASS**
     BOFI HOLDING, INC., GREGORY
15   GARRAGBRANTS, ANDREW J.                    **(2) GRANTING MOTION FOR**
     MICHELETTI, ESHEL BAR-ADON and             **FINAL APPROVAL OF THE**
16   PAUL GRINBERG,                             **PROPOSED SETTLEMENT AND**
                                     Defendants. **PLAN TO ALLOCATE THE**
17                                              **SETTLEMENT PROCEEDS**
18
19                                              **(3) GRANTING FINAL APPROVAL**
                                                **OF THE NOTICE OF THE**
20                                              **SETTLEMENT**
21
22                                              **(4) GRANTING MOTION FOR**
23                                              **ATTORNEYS' FEES AND**
                                                **EXPENSES, NOTICE AND**
24                                              **ADMINISTRATIVE COSTS, AND**
25                                              **AWARD TO PLAINTIFF**
26
27                                              **[ECF Nos. 96, 97]**
28

1

Before the Court are two Motions: Plaintiff's unopposed Motion for Final Approval of Class Action Settlement and Plaintiff's unopposed Motion for Attorneys' fees and expenses, notice and administration costs, and award to Plaintiff. ECF Nos. 96, 97. On September 23, 2022, the Court held a hearing on this matter. ECF No. 101. For the reasons set forth below, the Court **GRANTS** the Motion for final approval of class action settlement and **GRANTS** the Plaintiffs' Motion for Attorneys' fees and other costs and awards.

## I.    BACKGROUND

### A. Procedural History

On April 3, 2017, Plaintiff Bar Mandalevy ("Plaintiff") filed a putative class action complaint against Defendants BofI Holding, Inc., Gregory Garrabrants, and Andrew J. Micheletti. ECF No. 1. The Court thereafter appointed David Grigsby as Lead Plaintiff, (ECF No. 15), and Pomerantz LLP as Lead Counsel, (ECF No. 17). On February 20, 2018, Lead Plaintiff filed a Class Action Amended Complaint. ECF No. 27. On July 10, 2018, Lead Plaintiff filed the Second Amended Complaint ("SAC"), which is the operative complaint in this action. ECF No. 38. Among other changes, Plaintiffs added Eshel Bar-Adon and Paul J. Grinberg as Defendants in this action in the SAC. *See* SAC.

Plaintiff's SAC brings two causes of action against Defendants. First, Plaintiffs allege all Defendants are liable for violations of Section 10(b) of the Exchange Act and Rule 10b-5. SAC ¶¶ 160-70. Second, Plaintiffs allege the Individual Defendants violated Section 20(a) of the Exchange Act. *Id.* ¶¶ 171-75. Plaintiff alleges that Defendants made materially false and misleading statements regarding (1) the Company's conduct related to lending to criminals which might have exposed the Company to liability under anti-money laundering statutes, (*id.* ¶¶ 6-7); and (2) whether federal agencies, including the SEC, DOJ, and FDIC were investigating the Company, (*id.* ¶¶ 10-11).

On August 17, 2018, Defendants moved to dismiss Plaintiff's SAC. ECF No. 42. The Court granted Defendants' Motion to Dismiss on December 7, 2018, finding that Lead Plaintiff failed to plead loss causation. ECF No. 50. Plaintiff appealed the Court's

order of dismissal, and the Ninth Circuit Court of Appeals reversed the Court's order in part. *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1208, 1209 (9th Cir. 2020). The Ninth Circuit found that this Court's conclusion that records obtained through FOIA did not qualify as a corrective disclosure was reversible error. *Id.* at 1209. However, the Ninth Circuit agreed that the article in *Seeking Alpha* did not qualify as a corrective disclosure because it contained only public information. *Id.* The Ninth Circuit also noted that the district court addressed only loss causation and needed to also consider scienter on remand. *Id.*

The Court then ordered limited briefing on the issue of scienter. ECF No. 64. On February 3, 2021, Defendants again moved to dismiss the SAC. ECF No. 66. The motion argued that the SAC failed to plead facts that supported Plaintiff's allegation that BofI acted with the requisite scienter when it released its March 31, 2017 press statement in which it denied knowledge of government investigations. *Id.* The Court denied Defendants' motion to dismiss the Section 10(b) claims against BofI ("the Company") and individual Defendants Garrabrants, Micheletti, Bar-Adon, and denied the motion as to the Section 20(a) claim in full. ECF No. 69; *Mandalevy v. BofI Holding, Inc.*, No. 17-CV-667 (GPC) (KSC), 2021 WL 794275, at *8 (S.D. Cal. Mar. 2, 2021). In its denial, the Court found "the SAC, viewed holistically, raise[d] a strong inference that BofI intentionally made the misleading press release statement or acted with deliberate recklessness as to its falsity." *Id.* at *5.

On November 23, 2021, the Parties reached an agreement in principle to settle this action and filed a Joint Motion to Continue All Deadlines Due to Settlement with this Court on November 24, 2021. ECF No. 84. The agreement was memorialized in a memorandum of understanding ("MOU"), which was executed on December 8, 2021. ECF No. 87-3, Szydlo Decl. Ex. 1 ("Stipulation and Agreement of Settlement") at 5. The MOU sets forth the Parties' agreement to settle and release all claims that were asserted or could be assert in return for a $900,000 payment from the Defendants to the Settlement Class. The MOU was formalized on January 31, 2022. ECF No. 87-3.

On April 15, 2022, the Court held a hearing on the Preliminary Approval of Class Settlement, (ECF No. 92), and on May 17, 2022, the Court provisionally approved certification of the settlement class; conditionally approved the proposed notice form and proof of claim form; approved lead Plaintiff's plan of allocation; and granted preliminary approval of the class action, (ECF No. 93). The Court conditionally approved the proposed notice form and proof of claim form on June 2, 2022. ECF No. 95.

### B. Negotiation and Settlement Terms

Plaintiff and Defendants engaged in "vigorous arm's-length negotiations" in coming to the terms memorialized in the Settlement Agreement. ECF No. 87-1. Lead Plaintiff has agreed to settle and release the claims asserted "[b]ased upon their investigation, prosecution, and the early neutral evaluation of the case." ECF No. 87-3 ("Settlement Agreement") at 6.

The Settlement Agreement provides for a Settlement Amount of $900,000 "to be made into an escrow account specified by Lead Plaintiff." Settlement Agreement at 17. The Settlement Agreement provides that the total Settlement Amount will be used to pay: (a) any Taxes; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court. *Id.* In the Motion, Plaintiff's counsel estimates a gross average recovery of $0.05 per damaged share for each Settlement Class Member (less the deduction of Court-approved fees, expenses, and costs of notice and claims administration). ECF No. 87-1 at 26.

Settlement Class Members may be ascertained through Defendants' records. Settlement Agreement at 21. After BofI provides "to the Claims Administrator in electronic format . . . its reasonably available lists (consisting of names and addresses) of the holders of BofI Securities during the Settlement Class Period," the Claims Administrator would mail the Notice and Proof of Claim Form to those members of the Settlement Class as may be identified through reasonable effort. Settlement Agreement at 22. Each Settlement Class Member will be required to submit a Claim Form, to be reviewed by the Claims Administration. The Claim Administrator "shall determine in

accordance with [the Settlement Agreement] and the Plan of Allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court." ECF No. 94-1 at 24. Any Settlement Class Members who do not submit a Claim Form "shall be forever barred from receiving any distribution from the Net Settlement Fund." *Id.* at 24. Further, "Claim Forms that do not meet the submission requirements may be rejected," but "[p]rior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted." *Id.*

The Settlement Agreement provides that, following the Court's entry of Judgment in this Action and the effective date of the Settlement, any Settlement Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund, but will be otherwise bound by the terms of the Settlement Agreement "and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against Settling Defendants or the Settling Defendants' Releasees with respect to the Released Plaintiff's Claims." *Id.* at 23. Payment pursuant to the Class Distribution Order "shall be final and conclusive against all Settlement Class Members." *Id.* at 25. The Agreement also provides that "[n]o person or entity shall have any claim against Lead Plaintiff, Lead Plaintiff's Counsel, the Claims Administrator or any other agent designated by Lead Plaintiff's Counsel, or the Defendants' Releasees and/or their respective counsel, arising from distributions made substantially in accordance with the [Settlement Agreement], the Plan of Allocation approved by the Court, or any order of the Court." *Id.* at 26.

The Second Amended Notice Form, (ECF No. 94),[1] incorporates the revisions directed by the Court and discloses material information to a Settlement Class Member's

---

[1] When Lead Plaintiff filed the motion for preliminary approval, the Proposed Notice Form was attached to the motion at ECF No. 87-5. Before the hearing on the matter, Plaintiff filed an Amended Notice Form, which appears at ECF No. 91-1. After the May 17, 2022 hearing, Plaintiff filed a Second Amended Notice Form pursuant to Court instruction at ECF No. 94-1.

3:17-CV-667-GPC-MSB

decision whether to accept, object to, or opt out of the Settlement, including: (1) the proposed Settlement Class; (2) the terms and provisions of the Amended Stipulation, including the Settlement Among; (3) the relief to the Settlement Class and releases to Defendants and Defendants' Releasees that the Settlement will provide; (4) the maximum award of attorney's fees and reimbursement of reasonable expenses to Lead Counsel and the maximum amount of the award for notice and administration costs; (5) the date, time and place (to be decided by the Court) of the hearing on Final Approval of class action settlement; and (6) the procedures and deadlines for opting out of the settlement or submitting comments or objections. ECF No. 94-1.

The Settlement Agreement releases:

> [A]ny and all claims, demands, rights, causes of action, and liabilities, whether based in law or equity, arising under federal, state, local, statutory or common law or any other law, rule or regulation including both known and Unknown Claims, that arise out of or relate in any way to the institution, prosecution, or settlement of claims asserted in this Action against the Defendants, including under Rule 11 of the Federal Rules of Civil Procedure or for any other fees or cost shifting. Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement, any claims between or among the Defendants and Settling Defendants' Releasees, any claims between the Defendants and Settling Defendants' Releasees and their respective insurers, or any claims against any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

ECF No. 94-1 at 17-18. With respect to the released claims, Settlement Class Members also waive rights under California Civil Code § 1542.

## II.    DISCUSSION

### A. Legal Standard

The Ninth Circuit has a strong judicial policy that favors settlements in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, when the parties settle before class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). To that end, a

reviewing court must engage in two, separate inquiries: (1) whether the proposed class meets the certification requirements; and (2) whether the proposed settlement is "fundamentally fair, adequate, and reasonable." *Id.*

### B. Final Certification of the Proposed Settlement Class under Rule 23

The Court granted preliminary certification to the Settlement Class for settlement purposes in the Preliminary Order. ECF No. 93 at 22. It appears no material changes have occurred since this Court's preliminary approval and there is no opposition to final certification. Therefore, analysis for final certification will resemble the prior analysis for preliminary certification.

Federal Rule of Civil Procedure ("Rule") 23 establishes four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).  Under Rule 23(b)(3), common questions must predominate over individual questions, and the class action device must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

Plaintiff seeks certification of a Class defined as "all persons or entities who or which purchased or otherwise acquired BofI Securities during the Class Period set forth in the Second Amended Complaint, and were allegedly damaged thereby." ECF No. 96-1 at 13. Plaintiff argues that the requirements of Rule 23(a) are met such that the Class can be certified for the purposes of settlement. *Id.* at 13-14. Plaintiff states that "[n]o circumstance has arisen since the Court's preliminary certification of the Settlement Class that should cause this Court to undo its certification." *Id.* at 14.

### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).  Plaintiff notes that because this Action "involve[es]

nationally traded stocks," (ECF No. 96-1 at 13), this is a case where "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 56, 569 (C.D. Cal 2012). Indeed, "[w]here several million shares of stock were purchased during the class period, courts regularly find that class members are sufficiently numerous to render joinder impracticable." *In re Silver Wheaton Corp. Sec. Litig.*, No. 15 Civ. 5146 (CAS) (JEMx), 2017 WL 20139171, at *6 (C.D. Cal. May 11, 2017).  Joinder of this number of plaintiffs is clearly impractical, and courts have certified classes with far fewer members. *See Immigrant Assistance Project of Los Angeles Cty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 869 (9th Cir. 2002) (citing *Jordan v. Cty. of Los Angeles*, 669 F.2d 1311, 1319, n.10 (9th Cir. 1982)). The numerosity requirement is therefore satisfied.

### 2. Commonality

 Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is established if plaintiffs and class members' claims "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, Settlement Class Members are those individuals who purchased or otherwise acquired BofI securities during the relevant period of time. There are clear questions that are common to all class members, including: (1) whether the federal securities laws were violated by Defendants' acts; (2) whether statements made by Defendants to the investing public during the Settlement Class Period misrepresented material facts about the business and operations of BofI; (3) whether Defendants caused BofI to issue false and misleading statements during the Settlement Class Period; (4) whether Defendants acted knowingly or recklessly in issuing false and misleading statements; (5) whether the prices of BofI securities during the Settlement Class Period were artificially inflated because of

Defendants' conduct; and (6) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages. SAC ¶ 156. It is indisputable that the proposed class meets Rule 23(a)(2)'s commonality requirement. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) ("[A] class meets Rule 23(a)(2)'s commonality requirement when the common questions it has raised are apt to drive the resolution of the litigation, no matter their number.") (internal quotation marks and citation omitted).  The Court therefore finds that the proposed class meets the commonality requirement.

### 3. Typicality

Rule 23(a)(3)'s typicality requirement will be satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The named plaintiff must be a member of the class they seek to represent and must "possess the same interest and suffer the same injury" as putative class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations omitted). The representative claims are typical if they are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical."  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Here, David Grigsby was appointed as Lead Plaintiff.[2] ECF No. 15. As described in his motion for appointment as Lead Plaintiff, Mr. Grigsby alleged he lost more than $90,000 as a result of the alleged fraud during the Class Period. ECF No. 3-1 at 5. Mr. Grigsby's claims are typical of the putative class because he "purchased shares of BofI securities in reliance upon the materially false and misleading statements issued by [D]efendants and w[as] injured thereby," and "suffered a substantial loss" of more than $90,000. *Id.* at 10. Thus, Mr.

---

[2] As of January 12, 2021, Mr. Grigsby is the only remaining Lead Plaintiff in this action. *See* ECF No. 57.

Grigsby's claims for damages were based upon the same allegations outlined in the Second Amended Complaint. *See* SAC ¶ 156.

### 4. Adequacy

Under Rule 23(a)(4), representative parties must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In analyzing whether Rule 23(a)(4) has been met, the Court must ask two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted). The adequacy of representation requirement is designed to deny certification in instances of "actual fraud, overreaching, or collusion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (emphasis in original).

It does not appear that Plaintiff has any interests that are in conflict with the Settlement Class.  Plaintiff's counsel, attorneys Pomerantz LLP are experienced securities litigators who have litigated numerous securities class actions on behalf of stakeholders in district courts throughout the country. *See* ECF No. 87-9, Firm Resume (Ex. 2) at 2-10. There is no indication that Plaintiff or his counsel will not continue to prosecute this lawsuit vigorously. The Court therefore concludes the adequacy requirement is met for the purposes of conditional certification.

### 5. Predominance and Superiority

Finally, to certify a class under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  And, for settlement purposes, a class settlement is superior to other available methods of fair

resolution of a controversy when the class mechanism will reduce litigation costs and promote greater efficiency. In a class action settlement, the Court need not address whether the case, if tried, would present issues of manageability under Rule 23(b)(3)(D). *Amchem*, 521 U.S. at 620.

Here, Defendants' liability depends on whether Defendants violated securities laws, whether they acted with the requisite scienter, and whether Defendants' conduct caused damages to Lead Plaintiff and the Settlement Class. These questions predominate over any individualized inquires that may exist as to any individual class members in this litigation. *See In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 641 (C.D. Cal. 2009) ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages."). Although damages may differ among each member of the Class, liability can be determined on a classwide basis. *See id.* at 640.

Further, the Ninth Circuit recognizes that class actions are a superior method of prosecuting securities fraud actions. *See e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975) ("The availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws."). Class actions are thought to be a particularly effective method to police against corporate wrongdoing in the securities fraud context. *See A&J Deutscher Fam. Fund v. Bullard*, No. 85 Civ. 1850, 1986 WL 14903, at *3 (C.D. Cal. Sept. 22, 1986). Thus, the Rule 23(b)(3) requirements of predominance and superiority are satisfied.

### C. Final Approval of Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any class action settlement. Before final approval of a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Such an evaluation is made in the context of a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In Re Syncor ERISA*

*Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Any fairness determination requires the Court to "focus[ ] primarily upon whether the particular aspects of the decree that directly lend themselves to pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members—strictly comport with substantive and procedural standards designed to protect the interests of class members." *Staton*, 327 F.3d at 960. Courts evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

Rule 23(e) requires judicial approval of class action settlements as follows:

(2) **Approval of the Proposal.** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). For the reasons that follow, the Court finds that the Settlement Agreement reached by the Parties is likely fair, reasonable, and adequate, and GRANTS final approval of the class action settlement.

### 1. Adequacy of Representation

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis is "redundant of the requirements of Rule 23(a)(4)." 4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed. 2020); *In re GSE Bonds Antitrust*

3:17-CV-667-GPC-MSB

1  *Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule
2  23(a)(4) and Rule 23(e)(2)(A)).

3      The Court found above that Plaintiff and his counsel adequately represent the class
4  for the purposes of class certification.  For the same reasons, the Court finds that the
5  adequacy of representation requirement under Rule 23(e)(2)(A) is met.

6                    **2.  Arm's Length Negotiation**

7      Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was
8  negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B). This Action was commenced in
9  2017, and the Parties have conducted extensive discovery. Plaintiff's counsel asserts the
10 Settlement was reached "only through arm's-length negotiations. . . . [And there is] no
11 hint of collusion . . . . There is no 'clear sailing' agreement and the Settlement was
12 achieved only after protracted negotiations between counsel." ECF No. 96-1 at 25; *see*
13 *also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal.
14 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation
15 is presumed fair."). Given the length of this litigation, the Court finds it appropriate for
16 "[g]reat weight [to be] accorded to the recommendation of counsel, who are most closely
17 acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms*, 221
18 F.R.D. at 528. Thus, the Court concludes that this factor is satisfied.

19              **3.  Adequacy of Relief Provided to the Class**

20     Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for
21 the class is adequate, taking into account: (i) the costs, risks, and delay of trial and
22 appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,
23 including the method of processing class-member claims; (iii) the terms of any proposed
24 award of attorney's fees, including timing of payment; and (iv) any agreement required to
25 be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).  The amount offered in
26 the proposed settlement agreement is generally considered to be the most important
27 consideration of any class settlement.  *See Bayat v. Bank of the West*, No. C-13-2376

28

EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178–79 (9th Cir. 2013)).

The Parties have agreed to settle this case for $900,000. Settlement Agreement at 17. Any deductions for attorney's fees, and costs of notice are to be deducted from the Settlement Amount, only by the Court's approval upon motion by Lead Plaintiff. As a percentage of estimated damages, the Settlement Amount is well above the median percentage of the recovery level for investor losses in securities class action settlements. *See In re Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, No. 02-ML-1475 (DT), 2005 WL 1594403, at *8–9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages)).

### a. Costs, risks, and delay of trial and appeal

Although Plaintiff "believes that his case is strong," he is aware of the risks posed in continuing the action. ECF No. 96-1 at 18. "To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). While a settlement need not compensate class members for the maximum value of their claims, there is no fixed percentage of the potential recovery that renders a settlement amount reasonable.  *See In re Baan Co. Sec. Litig.*, 284 F. Supp. 2d 62, 65 (D.D.C. 2003) (citing *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998)). The Court therefore must examine whether the Settlement Agreement will likely adequately compensate the class given the costs, risks, and delay of trial and appeal based on the facts of this case.

Here, the Settlement Amount is $900,000. Settlement Agreement at 17. In the Motion for Preliminary Approval, Plaintiff's counsel estimates a gross average recovery of $0.05 per damaged share for each Settlement Class Member (less the deduction of Court-approved fees, expenses, and costs of notice and claims administration). ECF No. 87 at 26. Further, "[u]nder the Settlement, Defendants will pay $900,000, which

3:17-CV-667-GPC-MSB

represents almost 4.5 times of the approximately $200,000 in estimated aggregate damages under a conservative damages analysis, and almost 21% of the approximately $4,300,000 under an aggressive (but more challenging to prove) damages analysis." ECF No. 96-1 at 22.

Plaintiff notes the cost, risks, and time that will be spent should this case not be settled at this stage. For example, "Plaintiff would need to engage in fact discovery, requiring review of thousands of documents and deposing Defendants, BofI employees, and non-parties." ECF No. 96-1 at 20. Plaintiff faces the risk that he might "lose on summary judgment" or "lose at trial." *Id.* If the case goes before a jury, Plaintiff's award could be reduced significantly. *Id.* And, of course, even if Plaintiff's case survives through trial and receives a favorable jury award, Plaintiff will still likely be subject to numerous post-trial motions and an appeal. *Id.* at 21.

Based on these potential risks and burdens, Plaintiff contends that the settlement amount provides adequate relief to the class. Indeed, as stated above, "Lead Plaintiff estimates that the Settlement returns 4.5 times the among of estimated damages (using the low end of damages models) or almost 21% (using the high end of damages models)," which is a greater recovery than similar class actions. ECF No. 96-1 at 22; *see e.g. In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving a settlement that provided class with 6% recovery of maximum damages exposure).

This case presents complex issue that would need to be litigated, and it is not clear from this stage in the litigation which side would prevail. There is still class certification, summary judgment, trial, and appeal to contend with. Each side would need to bear its own costs through each stage. Legal and factual determinations on issues like scienter and loss causation would place each side at risk of rulings in the other Party's favor. As such, the "Settlement locks in a substantial benefit to the Settlement Class." ECF No. 96-1 at 22.

Accordingly, although the settlement amount is only a portion of Defendant's maximum potential exposure according to Plaintiff's calculations, the relief appropriately

accounts for the not insubstantial risk that Plaintiff and the class would recover nothing on some or all claims were this to proceed to trial. *Cf. Mejia v. Walgreen Co.*, No. 2:19-CV-00218 WBS AC, 2021 WL 1122390, at *4–5 (E.D. Cal. Mar. 24, 2021) (finding that existence of potential defenses weighs in favor of finding reasonable the proposed settlement amount of approximately 22.37% of maximum possible recovery). The Court therefore concludes that the costs and risks of proceeding with litigation likely renders the agreed-upon settlement amount, $900,000 or 21% of Defendant's maximum potential liability, adequate relief for the class as a whole.  *See Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198, 2016 WL 5907869, at *3, 7 (N.D. Cal. Oct. 11, 2016) (approving a California wage and hour settlement where the class received 11.6% of the estimated total liability, or approximately $29 per work week); *Leverage v. Traeger Pellet Grills, LLC*, No. 16-CV-00784, 2017 WL 2797811, at *7 (N.D. Cal. June 28, 2017) (approving a California wage and hour settlement where the class received 18% of the estimated total liability).

### b.  Effectiveness of proposed method of distributing relief

Plaintiff's plan for distributing relief to and allocating the Settlement Amount among Settlement Class Members is detailed in the Preliminary Approval Order and Second Amended Notice. ECF No. 93; 94. Plaintiff reports that the Claims Administrator has duly followed this plan. *Id.* at 28. The Claims Administrator mailed the Notice to those able to be identified and posted the Summary Notice online via *GlobeNewswire*. *Id.* The Notice alerted class members to the settlement and directed them to a case-specific website where key document were posted. *Id.* Class members completed a claim form to calculate their claim amount. *Id.* Class Members were then able to file their claims electronically. *Id.* This is straightforward and does not require intensive labor on the part of any class member.

Each class member's allocation of the Net Settlement Fund Distribution Amount will be distributed by check, and the Claims Administrator will make efforts to ensure Authorized Claimants cash their distribution checks. ECF No. 87-1 at 23. Thus, the

method of distributing relief is simple and effective. *See Walters v. Target Corp.*, No. 3:16-CV-1678-L-MDD, 2019 WL 6696192, at *6–7 (S.D. Cal. Dec. 6, 2019); *Valenzuela v. Walt Disney Parks & Resorts U.S., Inc.*, No. SACV171988JVSDFMX, 2019 WL 8647819, at *8 (C.D. Cal. Nov. 4, 2019). The Court finds that this proposed method of distributing relief is effective for the purposes of Rule 23(e).

### c.  The Attorneys' Fee Award

Class Counsel seeks $225,000 in attorneys' fees, or 25% of total Settlement Amount, and $138,631.36 plus interest in costs. Based on the reasoning below, the Court finds that the attorneys' fees and costs are reasonable.

### d.  Side Agreements

Rule 23(e)(3) requires that the Parties "must file a statement identifying any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23. Here, Plaintiff states that the Agreement allows the Defendants to terminate the Settlement if enough class members opt out. ECF No. 96-1 at 29. This type of provision is known as a "blow-up" clause in securities class actions. These provisions are common and guard against the possibility that a sufficient number of class members opt out of a class action settlement such that the Defendant's potential future liability is not reduced in a way that renders the settlement worthwhile. *See e.g.*, *Mondrian v. Trius Trucking, Inc.*, No. 1:19-cv-884-DAD-SKO, 2022 WL 2306963, at *20 n.20 (E.D. Cal. June 27, 2022) (citing a number of securities class action settlements with "blow-up" clauses and their opt-out thresholds). Plaintiff states that although the existence of a blow-up clause is disclosed to class members, the exact number of shares that triggers this right for the Defendants is not disclosed to the class members. ECF No. 96-1 at 29. Because there are no valid exclusions, as stated above, the Court finds that the omission of the blow-up threshold is immaterial.

Further, the Manual for Complex Litigation states that the purpose of Rule 23(e)(3) is to require disclosure to a class of agreements that "might have affected the interests of class members by altering what they may be receiving or foregoing." Manual for

Complex Litigation (Fourth) § 21.631 at 319 (2004). For example, a Court should note if an undisclosed side agreement "reveal[s] additional funds that might have been paid to the class that are instead paid to selected claimants or their attorneys." *Id.* The non-disclosure of a blow-up clause threshold does not relate to what the class members will receive, or signal that there is a side agreement made solely for the benefit of the attorneys. Thus, the Agreement is not rendered invalid based on this non-disclosure alone.

### e.  Reaction of the Class

The reaction of the class also supports finding the settlement is adequate. As stated elsewhere, the Claims Administer mailed or emailed 73,928 Notice and Claim Forms to potential settlement class members. ECF No. 100 at 2. The Claims Administrator also published the Summary Notice in *Globe Newswire* on June 28, 2022. *Id.* at 3. A website was also created with information on the settlement and how to submit a claim. *Id.*

September 2, 2022 was the deadline for objections and exclusions. *Id.* Lead Counsel states that no "valid" objections had been received as of the filing of their Reply on September 6, 2022. *Id.* One objection was made to the Plan of Allocation. *Id.* at 3 n.3. Counsel states that this is an invalid objection because the class member objected to the "application of the '90-day look back' provision for calculating damages set forth in the PSLRA." *Id.*[3] Counsel does not go into detail about why this objection is invalid in their papers, but at the hearing on the matter, Lead Counsel stated their belief that the PSLRA requires this method of calculating damages in securities fraud settlements. Courts in this

---

[3] The PSLRA's 90-day look back provision limits a class member's damages to the difference between the purchase price and "the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. § 78(u)-4(e)(1). This prevents the possibility of class members receiving a windfall should a corrective disclosure drop the share price, but the price later rebounds despite the disclosure.

Circuit have found that the "90-day bounce back rule does not, on its face, apply to settlements," and as such these courts have allowed alternative methods of calculating damages in securities fraud settlements. *See e.g.*, *In re Veritas Software Corp. Sec. Litig.*, No. C-03-0283 MMC, 2005 WL 3096079, at *11 (N.D. Cal. Nov. 15, 2005), *vacated on other grounds by In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962 (2007). However, because the PSLRA specifically sanctions the "90-day look back" method, the Court finds that this manner of calculating damages for the class members is fair and reasonable. The Court does not express an opinion on whether such method *must* be used in the settlement context.

Lead Counsel also states that one invalid request for exclusion has been made. *Id.* at 3. Counsel states the exclusion is invalid because the class member made a profit on their purchased shares, and as such, there is no "Recognized Loss." *Id.* The Amended Notice clearly states that "[t]o the extent a Claimant had a market gain with respect to his, or her, or its overall transactions in BofI securities during the Settlement Class Period, the value of the Claimant's Recognized Claim shall be zero." ECF No. 94-1 ¶ 59. Thus, the Court agrees this request for exclusion is invalid.

### 4. Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), advisory committee notes (2018 amendment); *see also* 4 William B. Rubenstein, Newberg on Class Actions § 13:56 (5th ed. 2020) ("Put simply, the court's goal is to ensure that similarly situated class members are treated similarly and that

dissimilarly situated class members are not arbitrarily treated as if they were similarly situated.").

### a. Equity among class members

In the Second Amended Notice, Lead Plaintiff and Lead Counsel state: "assuming that all Settlement Class Members elect to participate in the Settlement, the estimated average recovery (before the deduction of any Court-approved fees, expenses and costs as described herein) per eligible share is $0.05. ECF No. 94-1 at 4-5. Here, the Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon the "Recognized Loss" formula. ECF No. 94-1 at 22. The Recognized Loss will be calculated for each share of the BofI common stock purchased or otherwise acquired during the Settlement Class Period, March 14, 2016 to October 24, 2017. *Id.* Plaintiff's Recognized Loss formula is detailed in the Second Amended Notice, for each time period during which a share of BofI stock was purchased or otherwise acquired, and when it was sold. *Id.* at 24-26. For example, the Recognized Loss of a share that was purchased during the period of March 14, 2015 through October 24, 2017 has a Recognized Loss per share calculated as: "the amount of per-share price inflation on the date of purchase . . . minus the amount of per-share price inflation on the date of sale," *id.* at 24, based on the calculations which appear in Table 1 of the Second Amended Notice, *id.* at 23.

A Claimant's "Recognized Claim" under the Plan of Allocation is the sum of Recognized Losses for all shares of BofI securities during the Settlement Class Period. *Id.* at 26-27. The Net Settlement Fund will be distributed to Authorized Claimants on a pro rata basis based on the relative size of Recognized Claims. *Id.* at 27. A "Distribution Amount" will be calculated for each Authorized Claimant, which is equal to the Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *Id.* And if any Authorized Claimant's Distribution Amount calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant. *Id.* Each

class member's Distribution Amount will be distributed by check, and the Claims Administrator will make efforts to ensure Authorized Claimants cash their distribution checks. *Id.* at 29. Any funds that remain after six months will be redistributed to Authorized Claimants who cashed their checks and would receive at least $10.00 in re-distribution, *if* Lead Counsel and the Claims Administrator determine it would be cost-effective to engage in such re-distribution. *Id.*

Thus, the Plan of Allocation distributes the Settlement Fund on a pro rata basis to each class members based on their number of shares and the time period such shares were purchased. ECF No. 96-1 at 29-30. Securities class actions often distribute settlements in a similar manner. *See e.g.*, *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (plan allocation was "even handed" where claimants received a pro rata reimbursement based on when they bought and sold their shares). Thus, the Court finds the Plan of Allocation constitutes equitable treatment of all class members.

### b. Equity between unnamed members and class representative

The Court also considers whether any proposed service payment or incentive award for a named or lead plaintiff is equitable. Additional payments to class representatives or named plaintiffs, often referred to as incentive awards, generally do not render a settlement inequitable because such payments reflect that these plaintiffs have contributed efforts to benefit the class while bearing the risk of nonrecovery and retaliation. *See Staton*, 327 F.3d at 977. However, courts have refused to countenance settlements that provide for excessively high incentive awards or that give only *de minimis* relief to the rest of the class. *See id.* at 948, 978 (finding settlement inequitable where class representatives and other "active participants" were to receive up to $50,000 in incentive awards each and collectively receive more than half of the total monetary award despite representing less than 2% of the class).

Here, Lead Plaintiff requests an award of $2,500. ECF No. 97-1 at 28. Lead Counsel states that Plaintiff was available to Lead Counsel and performed his duties with "attentiveness and diligence." *Id.*; *see also Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d

1157, 1164 (9th Cir. 2013). An award of $2,500 represents .27% of the total settlement amount. Other courts have awarded substantially more than this to named plaintiffs. *See e.g.*, *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JST RZX, 2011 WL 320998, at *2 (C.D. Cal. Jan. 27, 2011) (awarding up to $3,000 for each of the named Plaintiffs when total settlement amount was $100,000); *Loreto v. Gen. Dynamics Info. Tech., Inc.*, 2022 WL 3013029 (S.D. Cal. Feb. 2, 2022) (awarding $10,000 to named Plaintiff, which comprised 1% of the maximum settlement amount and 2% of net settlement amount). The Court finds this award is in line with other awards in this Circuit and is not excessively high. For these reasons, the Court determines the Settlement Agreement treats all class members equitably.

### D. Notice to Class Members

Before the final approval hearing, the Court is required to direct adequate notice of the settlement be provided to all class members. Federal Rule of Civil Procedure 23 provides:

The Court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language:

    (i)    The nature of the action;
    (ii)   The definition of the class certified;
    (iii)  The class claims, issues, or defenses;
    (iv)  That a class member may enter an appearance through an attorney if the member so desires;
    (v)   That the court will exclude from the class any member who requests exclusion;
    (vi)  The time and manner for requesting exclusion; and
    (vii) The binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Strategic Claims Services ("SCS") was selected as Claims Administrator. ECF No. 100 at 2. 50,632 Notice packets were emailed to class members and 19,244 links to the Notice packet were emailed to class members. ECF No. 98-1 ¶¶6-7 (Bravata Decl.). Of

the packets mailed, 1,307 were returned as undeliverable, and USPS had forwarded addresses for nine, which SCS immediate mailed another packet. *Id.* ¶ 9. The remaining undelivered packets were "skip-traced" and 570 were re-mailed to the new address. *Id.* Since filing the Bravata Declaration, SCS has mailed an additional 673 Notice and Claims forms as well as 3,379 additional emails. ECF No. 100 at 2-3. Of these, 1,623 mailed forms were returned as undeliverable. *Id.* at 3. USPS had forwarding addresses for 313 and 631 were "skip-traced" and remailed. *Id.*

SCS also published information regarding the settlement online. ECF No. 98-1 ¶ 12. As of July 29, 2022, the website had received 2,525 views from 668 unique visitors. *Id.* The mailed notice and settlement website provided a deadline of September 2, 2022 for written requests for exclusion. *Id.* ¶ 13. As of September 6, 2022, SCS had received no valid objections or exclusions. ECF No. 100 at 3.

As set forth in the Agreement, and amended based on the Court's Order, (ECF No. 95), the Second Amended Notice provided class members with all necessary information to make an informed decision. Class members were told, among other things: "(1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) the amount of all Notice and Administration Costs for the Claims Administrator; (6) Lead Counsel's contact information; (7) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (8) the dates and deadlines for certain Settlement-related events." ECF No. 96-1 at 32. The Court thus finds that the Second Amended Notice satisfies the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).

### E.  Plaintiff's Motion for Attorneys' Fees, Administration Costs, and Incentive Award

Together with its Motion for final approval, Plaintiff has also filed a Motion for Attorneys' Fees and Expenses, Notice and Administration Costs, and Award to Plaintiff.

ECF No. 97-1. For the reasons below, the Court approves: (1) attorneys' fees calculated at $225,000, plus interest, and expenses in the amount of $138,631.36, plus interest; (2) payment to the Claims Administrator for costs incurred to date; and (3) an award of $2,500 to Lead Plaintiff David Grigsby.

### i. Attorneys' Fees and Expenses

Lead Counsel seeks attorneys' fees in the amount of $225,000, plus interest, and reimbursement of expenses incurred in the amount of $138,531.36, plus interest. "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.

Fees can be calculated by either the lodestar method or the percentage-of-the-fund method. *Id.* at 942. Use of the percentage method in common fund cases is the most dominant because of its various advantages, including increased incentive for counsel to litigate and promotion of efficiency. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Further, the Private Securities Litigation Reform Act ("PSLRA") itself provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6). Thus, the Court agrees with Plaintiff and elects to use the percentage-of-recovery method to award the attorneys' fees.

At the outset, the Court notes that the Ninth Circuit recognizes 25% as the benchmark percentage for the percentage-of-recovery method. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (citing *Bluetooth*, 654 F.3d at 942). Courts should analyze the following factors to determine if a percentage is reasonable: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of counsel's work; (4) the contingent nature of the fee and financial burden; (5) awards made in similar cases; (6) the reaction of the class; and (7) the lodestar cross-check. *See Omnivision*, 559 F. Supp. 2d at 1046; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047

(9th Cir. 2002). As noted by other courts, these factors intentionally track the factors used to evaluate the adequacy of a settlement. *Omnivision*, 559 F. Supp. at 1046.

Analysis of all of these factors support a finding that 25% of the settlement amount, or $225,000, is a reasonable fee in this case. Because many of these factors are already discussed previously, the Court here will only provide brief commentary here. First, $900,000 represents 4.5 times the amount of estimated damages calculated on the low end, or 21% of damages on the high end. ECF No. 97-1 at 16. As discussed, this is an achievement on behalf of the class.

Second, the risks associated with the litigation have been considered. Securities class actions are complex, difficult to prove, and must surmount many hurdles, including, at the outset, PSLRA's stringent pleading standards. This factor weighs in favor of the fee.

Third, prosecuting complex class actions takes skill and experience, and this is particularly true in securities class actions because the PSLRA makes it difficult to get past the motion to dismiss stage. *Omnivision*, 559 F. Supp. 2d at 1047. Here, Lead Counsel drafted a Second Amended Complaint and won on a Motion to Dismiss and an appeal. ECF No. 97-1 at 19. This factor supports the 25% fee.

The fourth factor also weighs in favor of the requested fee. Lead Counsel's fees were entirely contingent on a successful outcome, and Lead Counsel risked non-payment of 2,323 billable hours and $138,631.36 of expenses for five years. ECF No. 97-1 at 22. This is a "substantial outlay" and thus this factor supports the requested fee.

As to the fifth factor, as stated above, the Ninth Circuit has recognized that 25% is the benchmark in securities class actions. Some courts in the Ninth Circuit have even awarded up to 33% of the common fund. *See e.g.*, *Singer v. Becton Dickinson & Co.*, No. 08-cv-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding 33%); *In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (awarding 33%). Thus, 25% is similar to other cases.

Sixth, 50,512 Notice packets were mailed to class members and 18,830 links were emailed. ECF No. 97-1 at 25. There was also a Settlement website. *Id.* The Notice informed the class members that Lead Counsel would seek 25% of the settlement amount as well as interest and reimbursement. *Id.* Although class members were notified of their right to object to these terms, no class member has objected to the requested fees or expenses. *Id.* at 26.

Last, the seventh factor encourages the Court to do a lodestar cross-check on the requested percentage. Courts calculate lodestar by multiplying reasonable hourly rates by the number of hours spent. Here, Counsel states that 2,323.28 hours were spent prosecuting this case. ECF No. 97-1 at 24 (citing ECF No. 98-2 (Szydlo Decl.) ¶ 8). The Szydlo Declaration identifies an hourly rate ranging from $335 to $1,025 and calculates the total value at $1,550,906.70. Szydlo Decl. ¶¶ 5-8. This is a lodestar multiplier of .14, well below the multiplier range of one to four often used to cross-check reasonableness. *See Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. Sept. 30, 2016) (citing *Vizcaino*, 290 F.3d at 1052-54 (surveying multipliers in over 20 class actions and finding multipliers from on to four in over 80% of cases)). Thus, the Court concludes that the requested attorneys' fees are reasonable.

As to the requested expenses, "an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. Oct. 8, 2014) (quoting *In re Heritage Bond Litig.*, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005)). Lead Counsel has provided a breakdown of all costs incurred pursuing this action, detailed in the Syzdlo Declaration at ¶¶ 9-12. The Court agrees with Counsel that, because of the contingent nature of this action, Counsel had no incentive to accrue unnecessary or unreasonable expenses. As such, the Court finds expenses in the amount of $138,631.36 plus interest is reasonable.

### ii. Notice and Administration Costs

Lead Counsel seeks $70,987.93 for the Claims Administrator for all notice and administration costs incurred as of July 29, 2022 and additional costs incurred as of September 6, 2022, which are detailed in the Plaintiff's Reply. ECF No. 97-1 at 27; ECF No. 100-3. No class member objects to this payment. Thus, the Court approve payment to the Claims Administrator for all costs incurred to date.

### iii. Award to Lead Plaintiff

For the reasons already discussed, the Court finds the $2,500 award to the Lead Plaintiff fair and reasonable.

## III. CONCLUSION

Based on the above, it is hereby ORDERED:

1. **Jurisdiction** - The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Settlement Class Members.

2. **Incorporation of Settlement Documents** - This Order and Judgment incorporates and makes a part hereof: (a) the Stipulation filed with the Court on January 31, 2022; and (b) the Notice and the Summary Notice, both of which were filed with the Court on January 31, 2022.

3. **Class Certification for Settlement Purposes** - The Court hereby affirms its determinations in the Preliminary Approval Order certifying, for the purposes of the Settlement only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class consisting of all persons and entities who or which purchased or otherwise acquired shares of BofI Securities between March 14, 2016 and October 24, 2017, inclusive (the "Settlement Class Period") and were allegedly damaged thereby. Excluded from the Settlement Class are Defendants, the present and former Officers and directors of BofI and any subsidiary thereof, and the Immediate Family members, legal representatives, heirs, successors or assigns of such

excluded persons and any entity in which any such excluded person has or had a controlling interest during the Settlement Class Period.

4.     **Adequacy of Representation** - Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby affirms its determinations in the Preliminary Approval Order certifying Plaintiff David Grigsby as Class Representative for the Settlement Class and appointing Lead Counsel as Class Counsel for the Settlement Class. Plaintiff and Lead Counsel have fairly and adequately represented the Settlement Class both in terms of litigating the Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

5.     **Notice** - The Court finds that the dissemination of the Notice and the publication of the Summary Notice: (a) were implemented in accordance with the Preliminary Approval Order and the Order Approving Plaintiff's Second Amended Proposed Notice Form; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action, (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder), (iii) Lead Counsel's motion for an award of attorneys' fees with interest and reimbursement of Litigation Expenses and Notice and Administration Costs, (iv) their right to object to any aspect of the Settlement, the Plan of Allocation and/or Lead Counsel's motion for attorneys' fees with interest and reimbursement of Litigation Expenses and Notice and Administration Costs, (v) their right to exclude themselves from the Settlement Class, and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules.

6.      **Final Settlement Approval and Dismissal of Claims** - Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted against Defendants in the Action), and finds that the Settlement is, in all respects, fair, reasonable and adequate to the Settlement Class. The Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

7.      The Action and all of the claims asserted against Defendants in the Action by Plaintiff and the other Settlement Class Members are hereby **DISMISSED WITH PREJUDICE**. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

8.      **Binding Effect** - The terms of the Stipulation and of this Order and Judgment shall be forever binding on Defendants, Plaintiff and all other Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns.

9.      **Releases** - The Releases set forth in paragraphs 5 and 6 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

(a)      Without further action by anyone, and subject to paragraph 10 below, upon the Effective Date of the Settlement, Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and their current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees,

attorneys, heirs, executors, and administrators in their capacities as such, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiff's Claim against Defendants and Defendants' Releasees, shall be permanently and forever enjoined from instituting, commencing or prosecuting, in any capacity, any and all of the Released Plaintiff's Claims against any of Defendants' Releasees, and shall be deemed to permanently covenant to refrain from instituting, commencing or prosecuting, in any capacity, any and all of the Released Plaintiff's Claims against any of Defendants' Releasees. This Release shall not apply to any of the Excluded Claims, as that term is defined in paragraph 1(mm) of the Stipulation.

(b)    Without further action by anyone, and subject to paragraph 10 below, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, attorneys, heirs, executors, and administrators in their capacities as such, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Defendants' Claim against Plaintiff and Plaintiff's Releasees, and shall forever be barred and enjoined from prosecuting any or all of Released Defendants' Claims against any of Plaintiff's Releasees. [This Release shall not apply to any person or entity listed on Exhibit 1 hereto.]

10.    Notwithstanding paragraphs 9(a) - (b) above, nothing in this Order and Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Order and Judgment.

11.    **<u>Rule 11 Findings</u>** - The Court finds and concludes that the Plaintiff and Settling Defendants and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

12. **Plan of Allocation Approval** - The Court finds and concludes that the formula for the calculation of the claims of Claimants as set forth in the Plan of Allocation submitted by Lead Counsel, as described in the Notice and in accordance with paragraph 1(ii) of the Stipulation, is hereby approved as fair, reasonable and adequate. Any further orders or proceedings solely regarding the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall be considered separate and apart from this Order and Judgment and shall not operate to terminate the Settlement or in any way disturb or affect this Order and Judgment, the finality of this Order and Judgment, or the release of the Released Claims. Any orders regarding the Plan of Allocation shall not affect or delay the Effective Date of the Settlement.

13. **No Admissions** - Neither this Order and Judgment, the Memorandum of Understanding, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Memorandum of Understanding and the Stipulation, nor any proceedings taken pursuant to or in connection with the Memorandum of Understanding, the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a) shall be offered against any of Defendants or Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of Defendants or Defendants' Releasees with respect to the truth of any fact alleged by Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind on the part of any of Defendants or Defendants' Releasees or in any way referred to for any other reason as against any of Defendants or Defendants' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

31

(b)     shall be offered against any of Plaintiff's Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of Plaintiff's Releasees that any of their claims are without merit, that any of Defendants or Defendants' Releasees had meritorious defenses, or that damages recoverable under the Second Amended Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of Plaintiff's Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

(c)     shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; provided, however, that the Parties and the Releasees and their respective counsel may refer to this Order and Judgment and the Stipulation to effectuate the protections from liability granted hereunder and thereunder or otherwise to enforce the terms of the Settlement.

14.     **Retention of Jurisdiction** - Without affecting the finality of this Order and Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for Notice and Administration Costs in the Action that will be paid from the Settlement Fund; (d) any motion for attorneys' fees and expenses that will be paid from the Settlement Fund; (e) the Plan of Allocation; (f) any motion to approve the Class Distribution Order; and (g) the Settlement Class Members for all matters relating to the Action.

15.     **Modification of the Agreement of Settlement** - Without further approval from the Court, the Plaintiff and Settling Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Order and

Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement. Without further order of the Court, Plaintiff and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

16.   **Lead Counsel's Attorney Fees and Expenses** - The Court hereby awards Lead Counsel attorneys' fees in the amount of $225,000 from the Settlement Fund, plus interest earned thereon, and expenses in an amount of $138,631.36, plus interest earned thereon, for the same time period and at the same rate as that earned on the Settlement Fund until paid. The Court finds that the amount of fees awarded is fair and reasonable in light of the time and labor required, the novelty and difficulty of the case, the skill required to prosecute the case, the experience and ability of the attorneys, awards in similar cases, the contingent nature of the representation and the result obtained for the Settlement Class. Said fees shall be allocated among any other plaintiffs' counsel in a manner which, in Lead Counsel's good-faith judgment, reflects each counsel's contribution to the institution, prosecution, and resolution of the Litigation.

17.   **Notice and Administration Costs**
The Court hereby awards the Claims Administrator its Notice and Administration Costs incurred to date, that is, $102,860.43. As per paragraph fourteen, above, the Court retains jurisdiction to consider a motion for distribution of additional costs incurred following this Order.

18.   **Plaintiff's Expenses Related to Representation of the Settlement Class**
The Court hereby awards David Grigsby his reasonable costs and expenses directly related to his representation of the Settlement Class in the amount of $2,500.

19.   The awarded attorneys' fees and expenses, and interest earned thereon, as well as any costs or expenses awarded pursuant to paragraphs 17 and 18, shall be paid to Lead

3:17-CV-667-GPC-MSB

Counsel from the Settlement Fund immediately after the date this Order and Judgment is executed subject to the terms, conditions, and obligations of the Stipulation. Any awards of attorneys' fees and expenses, as well as any costs or expenses awarded pursuant to paragraphs 17 and 18, shall in no way affect or delay the finality of this Order and Judgment and shall not affect or delay the Effective Date of the Settlement.

20. **Termination of Settlement** - If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Order and Judgment shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Order and Judgment shall be without prejudice to the rights of Plaintiff, the other Settlement Class Members and Defendants, and the Parties shall revert to their respective positions in the Action as of December 8, 2021, as provided in the Stipulation.

21. **Entry of Final Judgment** - There is no just reason to delay the entry of this Judgment as a final judgment in this Action. Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

**IT IS SO ORDERED.**

Dated:  September 23, 2022

Hon. Gonzalo P. Curiel
United States District Judge

3:17-CV-667-GPC-MSB